## PHOEBE G. *v.* ALBERT J. SOLNIT, COMMISSIONER OF MENTAL HEALTH AND ADDICTION SERVICES, ET AL.
### (SC 16037)

Callahan, C. J., and Berdon, Katz, Palmer and McDonald, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued April 23—officially released December 22, 1999**

** December 22, 1999, the date that this opinion was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*William Emmett Dwyer*, for the appellant (plaintiff).

*Maite Barainca*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (named defendant).

*Robert E. Lancaster* and *Michael Lifrak* and *Elsie Miller*, law student interns, filed a brief for Advocacy Unlimited et al. as amici curiae.

*Opinion*

BERDON, J. This is an appeal by the plaintiff, Phoebe G.,[1] through her next friend, Deborah Witkin, from the trial court's dismissal of her complaint for lack of subject matter jurisdiction. The plaintiff, for whom conservators were appointed, seeks injunctive relief[2] pursuant to General Statutes §§ 17a-540 through 17a-550 (patients' bill of rights),[3] 42 U.S.C. § 1983, and article

[1] The plaintiff is identified as Phoebe G. in order to protect her privacy.

[2] The plaintiff also seeks monetary damages. The plaintiff's claims for injunctive relief may, however, be moot. We note the commissioner's argument that "since [the plaintiff] is now in a nursing home and is no longer a patient of the [department of mental health and addiction services (department)], any request for injunctive relief is moot." Nevertheless, it is not necessary that the plaintiff still be a patient of the department to make claims under the patients' bill of rights. The patients' bill of rights applies to a "patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities" according to § 17a-541. The plaintiff resides at Bidwell Nursing Home in Manchester at the time of the proceedings in the trial court. If the trial court on remand determines that the plaintiff's present residential placement qualifies as a private facility for the treatment of persons with psychiatric disabilities, she can continue to make claims under the patients' bill of rights. The commissioner, however, is correct in the assertion that the plaintiff's claims for injunctive relief with respect to the commissioner may be moot if the trial court determines that she is no longer a patient of the department. Therefore, the trial court needs to determine whether the plaintiff's residential status continues to afford her protection under the patients' bill of rights and whether her claim for injunctive relief is moot.

[3] While various provisions of the patients' bill of rights have been amended since the plaintiff filed this action in 1996, those changes are either minor and technical in nature or not relevant to this case. In the interest of clarity, statutory references herein are to the current revision.

first, §§ 4 and 10, of the Connecticut constitution, to compel the defendant, Albert J. Solnit, the commissioner of mental health and addiction services (commissioner),[4] to provide confidential information to a patient advocate (advocate) and permit that advocate to attend treatment planning meetings with the commissioner's agents.

The two issues on appeal are: (1) whether the Superior Court has subject matter jurisdiction over a complaint brought pursuant to the patients' bill of rights or whether the Probate Court has exclusive jurisdiction; and (2) if the Superior Court has jurisdiction, whether a next friend has standing to bring an action on behalf of a conserved person[5] rather than her conservators. We conclude that the Superior Court has subject matter

---

The relevant provisions of the patients' bill of rights are General Statutes §§ 17a-541, 17a-542 and 17a-550. General Statutes § 17a-541 provides: "No patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and enter into contracts, except in accordance with due process of law, and unless such patient has been declared incapable pursuant to sections 45a-644 to 45a-662, inclusive. Any finding of incapability shall specifically state which civil or personal rights the patient is incapable of exercising."

General Statutes § 17a-542 provides: "Every patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to, (1) reasonable notice to the patient of his impending discharge, (2) active participation by the patient in planning for his discharge and (3) planning for appropriate aftercare to the patient upon his discharge."

General Statutes § 17a-550 provides: "Remedies of aggrieved persons. Any person aggrieved by a violation of sections 17a-540 to 17a-549, inclusive, may petition the superior court within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages."

[4] The action was brought against the defendant in both his official and individual capacity. References herein are to the commissioner.

[5] The term "conserved person" is used instead of "ward."

jurisdiction over a claim brought pursuant to the patients' bill of rights. We further determine that a conserved person may bring an action on her own behalf pursuant to the patients' bill of rights. We also conclude that an action on behalf of a conserved person may be brought by a next friend pursuant to the patients' bill of rights where there are exceptional circumstances. We remand the case to the trial court for a determination of whether those exceptional circumstances exist in this case.

The record reveals the following undisputed facts and procedural history. The plaintiff was declared incompetent to manage her affairs or care for herself on September 23, 1991, pursuant to General Statutes § 45a-650 (c).[6] The Probate Court appointed conservators of the plaintiff's estate and person, specifically her two daughters, Bettie J. and Carol S., who live in Florida. The plaintiff is estranged from both daughters, not because she chooses to be, but because they do not routinely make contact with her. Because their responsibilities as conservators are the plaintiff's only link to her daughters, she does not want to alter that legal relationship.

The plaintiff has been a long-time recipient of services from the commissioner and his agents. She sought the assistance of the Connecticut Legal Rights Project, Inc., which provided an advocate to address some specific problems that she was having under the commissioner's

---

[6] General Statutes § 45a-650 (c) provides: "If the court finds by clear and convincing evidence that the respondent is incapable of managing his or her affairs, the court shall appoint a conservator of his or her estate unless it appears to the court that such affairs are being managed properly without the appointment of a conservator. If the court finds by clear and convincing evidence that the respondent is incapable of caring for himself or herself, the court shall appoint a conservator of his or her person unless it appears to the court that the respondent is being cared for properly without the appointment of a conservator."

care.[7] The commissioner's agents refused to meet with her advocate to discuss the plaintiff's treatment without the consent of her conservators. One of her conservators initially executed a release allowing the advocate and the commissioner's agents to discuss the plaintiff's treatment. Upon the expiration of that release, however, the plaintiff's conservators refused to give their further consent.

The plaintiff subsequently instituted this action, through a next friend, alleging that she was denied the opportunity to participate meaningfully in her treatment planning in violation of the patients' bill of rights, because the commissioner refused to allow her advocate to attend treatment planning meetings with her. The commissioner claims that he cannot allow the plaintiff to have an advocate at her treatment planning meetings because doing so would reveal confidential medical information about the plaintiff without the authorization of her conservators who have not, and apparently will not, grant permission.

The Superior Court dismissed the complaint for lack of subject matter jurisdiction concluding that the Probate Court, and not the Superior Court, has jurisdiction to determine whether a conserved person has the right to an advocate of her choice. The plaintiff, through her next friend, appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

---

[7] We supplement the stipulated facts by setting forth in this footnote allegations made by the plaintiff. Although these allegations are not necessary for this decision, they allow the reader to understand more readily the present case. The plaintiff alleges that she had sustained injuries as a result of an assault by her roommate in a group home environment, that she had received improper medication and that she had received improper money management from the defendant's agents.

I

We must first address the issue of the Superior Court's subject matter jurisdiction over a complaint brought pursuant to the patients' bill of rights. General Statutes § 17a-550 provides that "[a]ny person aggrieved by a violation of [the patients' bill of rights] may petition the superior court within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages."

Section 17a-550 explicitly provides that the Superior Court has exclusive jurisdiction to adjudicate claims under the patients' bill of rights. The plaintiff's complaint, which was filed through her next friend, is predicated on violations of the patients' bill of rights. We conclude, and the commissioner does not dispute, that the Superior Court improperly dismissed the action for lack of subject matter jurisdiction.[8]

II

We also conclude that the plaintiff's status as a conserved person does not affect her ability to assert a claim under the patients' bill of rights in the absence of a Probate Court finding that she is incapable of exercising certain rights. General Statutes § 17a-541 provides: "No patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and enter into contracts, except in accordance with due process of law, and unless such patient has been declared incapable pursuant to sections 45a-644 to 45a-662, inclusive. *Any finding of incapability shall specifically state which civil*

---

[8] Of course, the Superior Court has jurisdiction to entertain an action alleging the violation of the plaintiff's state constitutional rights as well as an action brought pursuant to 42 U.S.C. § 1983.

*or personal rights the patient is incapable of exercising.*" (Emphasis added.) The plaintiff was a "patient" in a "facility" at the time of her complaint. She resided in Fairfield Hills Hospital which is a public "facility for the diagnosis, observation or treatment of persons with psychiatric disabilities . . . ." General Statutes § 17a-540 (a).

The Probate Court decree, which found that the plaintiff was incapable of "managing [her] affairs" and "caring for [herself]" because of her physical and mental incapacity, was general in form and did not state specifically any civil or personal rights that the plaintiff was incapable of exercising. Thus, the plaintiff is not precluded from making claims that her civil or personal rights have been infringed.

In general, the plaintiff is able to make claims under the patients' bill of rights, including the right to institute a legal action in the Superior Court under § 17a-550, and the right to seek temporary and permanent injunctions or to bring a civil action for damages under § 17a-540.

Most importantly, the plaintiff has a right to be an "active participant" in her treatment plan under General Statutes § 17a-542. Implicit in this right to active participation is a right to have an advocate to help her meaningfully participate in her treatment plan. Section 17a-542 provides in part that "[e]very patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to . . . (2) *active participation by the patient in planning for his discharge* . . . ." (Emphasis added.)

Because a patient's treatment plan must include a discharge plan and the patient is allowed to participate in planning for discharge, we agree with the plaintiff that she has a general right to active participation in her treatment plan. In *Mahoney* v. *Lensink*, 213 Conn. 548, 565, 569 A.2d 518 (1990), this court noted the legislature's "adoption of a statutory right to humane and dignified treatment . . . intended to afford patients a meaningful right to treatment, consistent with the requirements of good medical practice. . . . Meaningful treatment thus requires not only basic custodial care but also an individualized effort to help each patient by formulating, administering and monitoring a 'specialized treatment plan' . . . ." (Citation omitted.) We conclude that it is consistent with a meaningful right to treatment to allow the plaintiff to participate in her own treatment plan.

In order to realize her right to active participation, the plaintiff asserts that she needs an advocate. We agree that the plaintiff, as a person who suffers from mental illness, may not be able to advocate effectively on her own behalf and therefore, should be able to seek the help of an advocate to secure effectively her rights under § 17a-542.

Furthermore, the commissioner may be required to provide the plaintiff with an advocate pursuant to a federal consent decree. In *Doe* v. *Hogan*, United States District Court, District of Connecticut, Docket No. H88-239 (EBB) (October 19, 1989), the federal District Court ordered the commissioner to establish and maintain an advocacy program for indigent patients of in-patient state facilities (consent decree).[9] The consent decree

[9] The federal District Court's consent decree provided that advocates were available to indigent patients of the department. In *Doe*, the court specified that the legal assistance program "ha[d] the authority to serve any individual regarded as mentally ill and indigent in the State of Connecticut . . . . [T]he Program must provide advocacy assistance, including legal advocacy, to all indigent patients of [department] in-patient facilities. These facilities include Fairfield Hills Hospital . . . ." *Doe* v. *Hogan*, supra, United States District

authorized a legal assistance program which provides "advocacy assistance, including legal advocacy, to indigent persons regarded as mentally ill in the State of Connecticut. However, consistent with its priorities and resources, the Program must provide assistance to patients of Department in-patient facilities regarding their admission, *treatment, environmental conditions, discharge*, and other hospital-related rights under state or federal law or policy." (Emphasis added.) Id.

In sum, we conclude that the plaintiff's right to an advocate is implicit in § 17a-542. An advocate may also be required under the consent decree issued by the federal District Court in *Doe*. Therefore, the plaintiff has a right to active participation and by implication, a right to an advocate to assist her in participating in her treatment plan.

### III

Nevertheless, the commissioner argues that although the action need not have been brought by the conservator, absent "exceptional circumstances" it should not have been brought by a next friend.

First, we note that the general rule is that a next friend may not bring an action for a competent person. See *Whitmore* v. *Arkansas*, 495 U.S. 149, 166, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) (dismissing next friend's writ of habeas corpus because he did not demonstrate that real party in interest was unable to litigate claim himself).

In *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994), we held that although a guardian is the most appropriate person to represent a conserved person's

Court, Docket No. H88-239 (EBB). While the record indicates that the plaintiff was a patient at Fairfield Hills Hospital, it is necessary to determine if the plaintiff was indigent in order to qualify for an advocate pursuant to the consent decree.

interests, a next friend can bring a civil action in "certain exceptional circumstances . . . ." In *Orsi*, a foster mother filed an action on behalf of a child challenging the commissioner's decision to remove the child from foster care. Id., 463. The child had been represented by a court-appointed guardian and a guardian at litem. Id., 462. The trial court concluded that the foster mother did not have standing to raise legal claims on the child's behalf. Id., 464. Reversing the trial court, the Appellate Court concluded as a matter of law that the foster mother had standing as a next friend. Id., 465–66. We reversed the Appellate Court's decision that the foster mother had standing but concluded that she was not entirely precluded from instituting a legal action on the child's behalf as a next friend. Id., 466–67. The case was remanded to the trial court to determine whether there were exceptional circumstances such that the foster mother could file a civil action on behalf of the ward as a next friend notwithstanding the existence of a legal guardian. Id., 466; see also *Cotrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 263, 398 A.2d 307 (1978) ("[T]he purpose of authorizing a guardian ad litem is to ensure that the interests of the ward are well represented. . . . In order that this purpose be fulfilled, certain exceptional situations warrant the allowance of suit on behalf of the incompetent by a next friend." [Citations omitted.]) The trial court also had to determine if the next friend was a "proper person to bring [such] an action . . . ." *Orsi* v. *Senatore*, supra, 467.

Those exceptional circumstances in which a next friend may bring an action on behalf of a conserved person include those instances when the conservator "is absent, or is unwilling or unable to institute or prosecute the required action or appeal, and especially when, though declining to take such action himself, he does not forbid such proceeding, or when he is disqualified

by interest hostile to that of the infant, or is for other reasons an improper or unsuitable person to prosecute such actions on behalf of the ward." (Internal quotation marks omitted.) Id. Since no findings were made with respect to exceptional circumstances, a remand to the trial court is necessary. In the trial court, the plaintiff should be given an opportunity to demonstrate the existence of exceptional circumstances that would allow the next friend to bring an action on her behalf.[10] In addition, the plaintiff must show that the next friend is a proper person to bring such an action.

The trial court's judgment dismissing the action for lack of subject matter jurisdiction is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.

---

[10] We also note that, in the alternative, the plaintiff's attorney may simply file an appearance on her behalf and the next friend may withdraw from this action.

