LEGA SICILIANA SOCIAL CLUB, INC. *v.* ROBERT ST. GERMAINE, SR.
(AC 23071)

Lavery, C. J., and Bishop and West, Js.

Argued March 24—officially released July 8, 2003

*Alvin Rosenbaum,* for the appellant (plaintiff).

*Eddi Z. Zyko,* for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff corporation,[1] Lega Siciliana Social Club, Inc. (club), appeals from the judgment of the trial court rendered in favor of the defendant, Robert St. Germaine, Sr., following the granting of the defendant's motion for summary judgment. On appeal, the plaintiff claims that the court improperly (1) concluded that the allegedly defamatory statements by the defen-

---

[1] Pursuant to the laws of this state, the plaintiff corporation may sue for libel. *Monroe* v. *Crandall,* 3 Conn. App. 214, 221, 486 A.2d 657 (1985).

dant with reference to the plaintiff were not libelous per se, (2) concluded that the plaintiff had not shown that it suffered actual damages and (3) revisited the issue of damages, which had been previously decided by another judge when the defendant's motion to strike was granted.[2] In response, the defendant claims that the court properly granted the motion for summary judgment not only on the grounds adopted by the court, but also because all of his statements about the plaintiff were made in the course of a quasi-judicial proceeding or in an attempt to initiate such a proceeding and, thus, were protected statements entitled to absolute privilege. We reverse the judgment of the trial court.

As a preliminary matter, we set forth our standard of review. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188, 819 A.2d 765 (2003).

---

[2] The plaintiff also claims that the court improperly (1) concluded that there are only two recognized categories of libel per se and (2) granted summary judgment in a libel case. Contrary to the plaintiff's first claim, case law has made clear that "[t]wo of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Internal quotation marks omitted.) *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 492, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). The short answer to the plaintiff's second claim is that summary judgment may well be appropriate in some libel actions. See *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 315–16 n.4, 477 A.2d 1005 (1984).

A review of the documents submitted in conjunction with the motion for summary judgment reveals the following undisputed facts. At some point in 1994, the plaintiff purchased from the city of Waterbury a former school building, Roosevelt School, for use as a private social club, whose regular membership is restricted to native born Sicilians or natural born Americans of Sicilian ancestry. Thereafter, it sought and received a zone change from the Waterbury zoning board, despite objection from the defendant, a resident of the Norton Heights neighborhood of Waterbury, and other residents.

Approximately five years later, in 1999, the plaintiff applied for and obtained a liquor license for the club. The defendant was unhappy that he was not provided with "adequate notice" that the club had applied for the liquor license. In the defendant's view, the granting of a liquor license along with other operations of the club led to increased traffic and noise, which adversely affected the residents by destroying the privacy, seclusion and quiet character of their residential community.

On or about October 24, 1999, well after the plaintiff had received approval of its liquor license, the defendant sent a letter to Nicholas Augelli, president of the board of aldermen of the city of Waterbury, in which the plaintiff detailed his concerns regarding the club. A copy of that letter was sent to the minority leader of the board of aldermen and the zoning board. At the time the letter was sent, there were no proceedings pertaining to the club pending before either the board of aldermen or the Waterbury zoning board.

In the letter, the defendant detailed his dissatisfaction with the increased traffic and noise that he believed stemmed from club activities and the granting of the liquor license. He also chronicled his failed attempts to persuade his elected officials to take action. In the let-

ter, he stated: "Now that the Liquor Permit has been granted, we are seeing even more activity at the club, with parties and gatherings. Cars are parked on both sides of the narrow road and even spilling over the adjacent streets. Our quiet neighborhood is no more!"

On the basis of its belief that the letter contained defamatory statements, the plaintiff commenced this action. The statements in question are as follows:

"The rumors with the elderly go from [members of the club] having political connections in both state and local, to Mafia connections to rubber stamp whatever they want. We wish to live out our lives without fear. They as Italians do have the ethnic [muscle] to influence policy in both state and city [department] on the side of what is in their best interest for their Social Club. . . .

"Would Club Members allow another ethnic group to invade their [families'] quality of life as they are doing to us. . . .

"Due to rumors of Mafia and political connections my own wife would not sign the petitions for fear of having someone setting our house on fire. . . ."

In response to the complaint, dated May 15, 2000, the defendant filed a motion to strike on the grounds that (1) the allegedly defamatory statements were not made about the club, but rather its members and, therefore, the club did not have standing to sue; (2) the club failed to set forth any facts in its complaint that sufficiently allege defamation; (3) the complaint was legally insufficient and did not state a claim upon which relief can be granted because the defendant was privileged to make all statements; (4) the complaint was legally insufficient because the club did not allege that the defendant acted with malice; (5) the complaint was legally insufficient because the club did not plead any cognizable damage or harm because a corporation does

not have a reputation that can be injured by the alleged acts; and (6) the club's prayer for relief was insufficient because it did not correspond or was not supported by the allegations. The court denied the motion to strike on the grounds that the club's allegations sufficiently set forth a cause of action for defamation and libel per se, and that the club was not required, as a matter of law, to plead actual or special damages.

Subsequently, the defendant filed a motion for summary judgment in which he denied making the statements, claimed that the statements were not libelous per se and that the plaintiff had not shown any "cognizable damage or harm" to its reputation. The court granted the motion. This appeal followed. Additional facts will be set forth as necessary.

The dispositive issue on appeal is whether, in granting the motion for summary judgment, the court properly concluded that the publication by the defendant of the subject letter did not constitute libel per se.

The court granted the defendant's motion for summary judgment on the ground that the allegedly defamatory statements did not constitute libel per se. The court further concluded that because the statements were not libelous per se, to prevail, the plaintiff had to show "cognizable damage or harm" to its reputation to survive a motion for summary judgment. On the basis of the documents filed in conjunction with the motion for summary judgment, the court concluded that the plaintiff had shown no "cognizable damage or harm" as a consequence of the defendant's allegedly libelous statements.

We begin our resolution of the plaintiff's first claim with a brief overview of the law of defamation. "Defamation is comprised of the torts of libel and slander. Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill

or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him. . . . Slander is oral defamation." (Citation omitted; internal quotation marks omitted.) *DeVito* v. *Schwartz*, 66 Conn. App. 228, 234, 784 A.2d 376 (2001). Libel, which we are concerned with in the present case, is written defamation. *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 611, 116 A.2d 440 (1955).

"While all libel was once actionable without proof of special damages, a distinction arose between libel per se and libel per quod. . . . A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. . . . When a plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover. . . .

"Libel per se, on the other hand, is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . The distinction between libel per se and libel per quod is important because [a] plaintiff may recover general damages where the defamation in question constitutes libel per se. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it. . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him. . . . Whether a publication is libelous per se is a question for the court." (Citations omitted; internal quotation marks omitted.) *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 491–92, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). Because the plaintiff in the present case has not shown actual economic damages, the parties agree that to pre-

vail, the plaintiff must prove that the defendant's statements constitute libel per se.

"Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling. . . . To fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." (Citations omitted.) *Proto* v. *Bridgeport Herald Corp.*, 136 Conn. 557, 565–66, 72 A.2d 820 (1950).

"Moral turpitude, [our Supreme Court has] observed, is a vague and imprecise term to which no hard and fast definition can be given. . . . A general definition applicable to the case before us is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between man and law." (Citations omitted.) *Moriarty* v. *Lippe*, 162 Conn. 371, 383, 294 A.2d 326 (1972).

With those legal principles in mind, we turn to the plaintiff's allegations. The complaint alleges that the plaintiff's reputation in the community has been damaged as a consequence of defamatory statements contained in the subject letter. The plaintiff's claim is based largely on the defendant's assertion in the letter that the club has "political connections in both state and local, *to Mafia connections to rubber stamp whatever [it] want[s].*" (Emphasis added.)

The plaintiff acknowledges that the defendant was free to express his concerns about his view of the club's activities, which he claimed disturbed the peace of his residential community. The plaintiff argues, however, that the allegation that the club was connected with

the international criminal organization known as the Mafia exceeded permissible limits of free speech. In that regard, the plaintiff claims that the Mafia generally is known to be involved in criminal activities such as bribery, illegal gambling, manufacturing of narcotics and other acts. See, e.g., *United States* v. *Gotti*, 155 F.3d 144, 145 (2d Cir. 1998); *United States* v. *Van Dorn*, 925 F.2d 1331, 1333–38 (11th Cir. 1991); *United States* v. *Eufrasio*, 935 F.2d 553, 559–60 (3d Cir. 1991); *United States* v. *Persico*, 832 F.2d 705, 708 (2d Cir. 1987). Those are crimes, many of which, involve moral turpitude and are punishable by imprisonment. See *Drazen* v. *New Haven Taxicab Co.*, 95 Conn. 500, 507–508, 111 A. 861 (1920).

Moreover, the plaintiff claims that the allegedly libelous letter went beyond suggesting a mere affiliation with the Mafia because it stated that the plaintiff uses its Mafia connections to *"rubber stamp whatever [it] want[s]."* (Emphasis added.) Finally, the plaintiff claims that on its face, the latter recitation amounts to a statement that the plaintiff approves of the Mafia's illegal tactics and that the club utilizes those tactics to its benefit because it is by using those illegal tactics that the club gets whatever it wants.

We agree with the plaintiff that the allegedly defamatory statement is of the type that will "diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against [it]."[3] (Internal

---

[3] We are mindful that this court has stated that it is "settled that the credit, property or business reputation of a corporation can be injured by a false publication of defamatory matter, written or oral, which tends to prejudice it in the conduct of its trade or business, or to deter third persons from dealing with it. Since a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, property or business that a corporation can be injured by a false publication." (Internal quotation marks omitted.) *Monroe* v. *Crandall*, 3 Conn. App. 214, 221, 486 A.2d 657 (1985).

When the corporation, however, as is the case here, is not for profit

quotation marks omitted.) *DeVito* v. *Schwartz*, supra, 66 Conn. App. 234. We therefore conclude that the statement linking the plaintiff to the Mafia was libelous per se and, consequently, that the plaintiff was required neither to plead nor to prove actual damages.

As an alternate ground for affirming the judgment, the defendant claims that the allegedly defamatory statements were absolutely privileged because they were made in the course of a quasi-judicial proceeding or in an attempt to initiate such a proceeding.[4] See *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986).

In Connecticut, "[t]he class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings, and acts of State." *Hassett* v. *Carroll*, 85 Conn. 23, 35, 81 A. 1013 (1911); see D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 155, p. 419. It is well settled that "communications uttered or published in the course of judicial proceedings are absolutely privi-

and depends on financial support from the public, one who publishes a defamatory statement regarding it is liable if such statement "tends to interfere with its activities by prejudicing it *in public estimation.*" (Emphasis added.) 3 Restatement (Second), Torts § 561 (b), p. 159 (1977). We believe that the determination of whether the defendant's statement had prejudiced the plaintiff in public estimation is a question of fact to be determined by the finder of fact. See *Weiss* v. *Bergen*, 63 Conn. App. 810, 812–13, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 1254 (2001).

[4] The defendant argues as well that his letter was privileged because it was sent to the board of aldermen, which is a legislative body. The defendant has provided no legal authority or analysis relating to how the legislative immunity that is available to members of Congress and the state legislature should be extended to a letter submitted to a governmental body when no proceeding is then pending. See *State* v. *Edward B.*, 72 Conn. App. 282, 298, 806 A.2d 64 ("[c]laims that are inadequately briefed are deemed abandoned, and we are not bound to review them"), cert. denied, 262 Conn. 910, 810 A.2d 276 (2002). Additionally, no fair reading of the subject letter suggests that it was an effort by the writer to initiate a government proceeding. See, e.g., D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 156 (e), p. 421; see also note, "The Scope of Immunity for Legislators and Their Employees," 77 Yale L.J. 366, 372–73 (1967).

leged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously . . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Citations omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 245–46. Thus, the privilege "applies to statements made in pleadings or other documents prepared in connection with a court proceeding." (Internal quotation marks omitted.) *Preston* v. *O'Rourke*, 74 Conn. App. 301, 312, 811 A.2d 753 (2002).

"[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasijudicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992).

We now turn to the merits of the defendant's claim. It is true, as the defendant claims, that "[i]n Connecticut, parties to or witnesses before judicial or quasi-judicial proceedings are entitled to absolute immunity for the content of statements made therein." (Internal quotation marks omitted.) *Preston* v. *O'Rourke*, supra, 74 Conn. App. 311. It is equally true that "[i]n passing upon the issuance of a [liquor] permit, the [Waterbury zoning] board is an administrative body acting in a quasi-judicial capacity." (Internal quotation marks omitted.) *Astarita* v. *Liquor Control Commission*, 165 Conn. 185, 189, 332

A.2d 106 (1973). As a result, statements made by a party or a witness during and before the final disposition of a quasi-judicial proceeding before such a board would be absolutely privileged, as long as they are pertinent to the issue at hand. We disagree, however, that the absolute privilege extended to quasi-judicial proceedings applies in this instance.

The defendant's letter was sent long after the plaintiff had obtained its liquor license, and the defendant has not indicated to us that there were any other proceedings pending before the board. We also are not persuaded by the defendant's present argument that the letter reasonably can be read as an attempt to initiate a quasi-judicial proceeding. To accept that contention would be tantamount to stating that any citizen may write a defamatory letter to a municipal officer at any time under a cloak of immunity on the basis of a belated claim that the communication is an unspoken effort to initiate a governmental proceeding. That we will not do. Because our resolution of the first issue and the alternate ground urged by the defendant is decisive, we need not reach the remaining issues raised by the plaintiff.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.