PAUL LOWE, JR. *v.* CITY OF SHELTON ET AL.
(AC 24496)

Schaller, Dranginis and McLachlan, Js.

Argued February 20—officially released July 13, 2004

*Paul Lowe, Jr.*, pro se, the appellant (plaintiff).

*Karen Baldwin Kravetz*, with whom, on the brief, were *Thomas E. Katon* and *Jesse A. Langer*, for the appellees (defendants).

*Opinion*

SCHALLER, J. Paul Lowe and Nadine Cartwright-Lowe, initiated this appeal on behalf of the plaintiff Paul Lowe, Jr., their then minor son, from the judgment of the trial court, rendered in favor of the defendants, the city of Shelton, the board of education of the city of Shelton, Shelton High School and Donald K. Ramia, the headmaster of Shelton High School. We affirm the judgment of the trial court.

Before addressing the merits of the plaintiff's appeal, we must first determine whether we have jurisdiction over the appeal. The following facts, as found by the court, and procedural history are relevant to whether

we have jurisdiction. The plaintiff, then a freshman at Shelton High School, attempted to establish a jazz club at the school. The plaintiff's parents, after learning that the plaintiff's application for the jazz club was going to be denied by the student council, spoke with Ramia about the impending denial. Two days later, the student council denied the plaintiff's application to form the club.

Ramia sent a letter to the plaintiff's parents indicating why the student council rejected the proposed club. The letter stated, inter alia, that the application to form the jazz club was rejected because: "At the [student council] executive board meeting the members were informed that the advisors had resigned and therefore the club couldn't be approved because there were no advisors. The reason they resigned was because [the plaintiff] had reserved the band room telling [the music chairperson] that he had the advisors' permission, when in fact he did not have their permission, nor had he even spoke[n] to them about it."[1] Ramia subsequently determined that the plaintiff had, in fact, attempted to reserve the band room and that he had obtained permission from one of the advisors to the club. The plaintiff's parents were informed of that information in a letter from the corporation counsel for the city of Shelton.

The plaintiff's parents, as next friends and through counsel, initiated the present action on March 7, 2000, on behalf of the plaintiff, claiming that the statement in the letter was libelous because it asserted that the

[1] The letter also indicated that the application to form the jazz club was rejected because (1) the executive board believed that the membership requirements were too restrictive, (2) there was concern over who would be judging the experience of the applicants, as the club's advisors did not have musical backgrounds, (3) the club duplicated the efforts of the existing jazz band at the school and (4) the club would conflict with the Shelton High School band.

plaintiff was a liar. The plaintiff's parents did not raise any claims on their own behalf.

After a trial, the court rendered judgment in favor of the defendants. In its memorandum of decision, the court found that the plaintiff did not prove his claim of libel per se because he was "a student and has not reached that stage in life where one might say he was engaged in the practice of a profession or calling," and that the statement in the letter was not intended to cause any injury. The court also found that the plaintiff did not prove his claim of libel per quod because there was no evidence that he suffered any actual or special damages. In addition, the court found that the letter from the Shelton corporation counsel informing the plaintiff's parents that further investigation revealed that a faculty member had given permission to the plaintiff to use the band room constituted a retraction of the statement contained in the prior letter to the plaintiff's parents. Finally, the court found that the statement contained in the letter to the plaintiff's parents was privileged.

The plaintiff's parents, on behalf of the plaintiff but without the aid of counsel, brought this appeal on August 11, 2003. On December 18, 2003, the plaintiff reached the age of majority. He filed a pro se appearance on February 19, 2004. At oral argument, the defendants' attorney stipulated that the plaintiff was past the age of majority and the sole party plaintiff. At oral argument, we asked the parties to file simultaneous supplemental briefs on (1) whether we have subject matter jurisdiction over this appeal because it was filed by the plaintiff's parents without the appearance of an attorney and (2) if it was improper for the plaintiff's parents to file the appeal, whether the defect is curable. We initially conclude that we have subject matter jurisdiction over the plaintiff's appeal. We further conclude that nonattorney parents do not have the authority to maintain an appeal on behalf of their minor child without the

appearance of an attorney. Because, under the facts of this case, however, the defect was curable and was cured by the filing of a pro se appearance, we will address the merits of the plaintiff's appeal.

I

We initially address whether we have subject matter jurisdiction over this appeal. We conclude that we have jurisdiction.

"Subject matter jurisdiction involves the authority of a court to adjudicate *the type of controversy* presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . [I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Emphasis in original; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *St. John*, 80 Conn. App. 767, 771, 837 A.2d 841 (2004).

The defendants do not contest the court's competence to decide *the type of action* involved in this appeal. Rather, the defendants contend that we do not have subject matter jurisdiction over this appeal solely because it was brought by the plaintiff's nonattorney parents on his behalf.

This court has the competence and authority to hear the plaintiff's appeal. General Statutes § 52-263 authorizes an aggrieved party to appeal to this court from the decision of the trial court. The plaintiff in this case is the aggrieved party to this appeal, and all necessary parties are present.

The plaintiff's parents had standing to initiate this appeal. "In order for a party to have standing to invoke the jurisdiction of the court, that party must be aggrieved. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or *representative capacity*, some real interest in the cause of action . . . ." (Emphasis added; internal quotation marks omitted.) *Hall* v. *Kasper Associates, Inc.*, 81 Conn. App. 808, 811, 846 A.2d 228 (2004). At the time that this appeal was filed, the plaintiff had not yet reached the age of majority. Because the plaintiff was unable to bring the appeal himself, he was required to bring it through a next friend, in this case, his parents. As the plaintiff's next friends, the plaintiff's parents had an interest, in a representative capacity, to invoke the jurisdiction of this court.

Because the plaintiff's parents had standing to initiate this appeal on behalf of the plaintiff, and the plaintiff has been aggrieved by the decision of the trial court, we have subject matter jurisdiction over this appeal.

II

We next address whether the nonattorney parents properly brought this appeal without the appearance of an attorney. We conclude that they did not.

The plaintiff's parents filed this appeal, as next friends, on behalf of the plaintiff, a minor at the time. A next friend is a "person who appears in a lawsuit to act for the benefit of . . . [a] minor plaintiff . . . ." Black's Law Dictionary (7th Ed. 1999). "It is well established that a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented." (Internal quotation marks omitted.) *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994); 42 Am. Jur. 2d, Infants § 160 (2000).

The plaintiff's parents brought this action solely in a representative capacity as next friends. As we have noted, they did not raise any claims of their own. Accordingly, the party in interest in the underlying action and the aggrieved party to this appeal is the plaintiff, not his parents. "It is the infant, and not the next friend, who is the real and proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian *ad litem*, by whom a suit is brought or defended in behalf of another." (Emphasis in original.) *Morgan* v. *Potter*, 157 U.S. 195, 198, 15 S. Ct. 590, 39 L. Ed. 670 (1895); *Williams* v. *Cleaveland*, 76 Conn. 426, 431–32, 56 A. 850 (1904); Black's Law Dictionary (7th Ed. 1999) (defining "next friend").

As nonattorneys, the plaintiff's parents lacked authorization to maintain this appeal without the appearance of an attorney. "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." (Emphasis in original.) *Iannaccone* v. *Law*, 142 F.3d 553, 558 (2d Cir. 1998). "Any person who is not an attorney is prohibited from practicing law, except that any person may practice law, or plead in any court of this state 'in his own cause.'" General Statutes § 51-88 (d) (2). The authorization to appear pro se is limited to representing one's own cause, and *does not permit individuals to appear pro se in a representative capacity.*" (Emphasis added.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 34 Conn. App. 543, 546, 642 A.2d 62, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994). The plaintiff's parents in this case were not appearing for their own cause. They were appearing for another individual, their son, in a representative capacity.

Although there is no appellate case law in Connecticut addressing whether parents, without the aid of an

attorney, can represent the interest, as next friends, of their children, the courts in other jurisdictions that have addressed that issue have universally held that they may not do so.[2] The reasoning of the United States Court of Appeals for the Second Circuit is persuasive: "The choice to appear *pro se* is not a true choice for minors who under state law . . . cannot determine their own legal actions. There is thus no individual choice to proceed *pro se* for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.

"It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian." (Emphasis in original.) *Cheung* v. *Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). The purpose for requiring an attorney is to "ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." *Devine* v.

[2] *Shepherd* v. *Wellman*, 313 F.3d 963, 970–71 (6th Cir. 2002); *Collinsgru* v. *Board of Education*, 161 F.3d 225, 230–32 (3d Cir. 1998); *Devine* v. *Indian River County School Board*, 121 F.3d 576, 581–82 (11th Cir. 1997), cert. denied, 522 U.S. 1110, 118 S. Ct. 1040, 140 L. Ed. 2d 106 (1998); *Johns* v. *San Diego*, 114 F.3d 874, 876–77 (9th Cir. 1997); *Cheung* v. *Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61–62 (2d Cir. 1990); *Meeker* v. *Kercher*, 782 F.2d 153, 154–55 (10th Cir. 1986); *Bullock* v. *Dioguardi*, 847 F. Sup. 553, 560–61 (N.D. Ill. 1993); *Lawson* v. *Edwardsburg Public School*, 751 F. Sup. 1257, 1258–59 (W.D. Mich. 1990); *Shields* v. *Cape Fox Corp.*, 42 P.3d 1083, 1086 (Alaska 2002); *Byers-Watts* v. *Parker*, 199 Ariz. 466, 469–70, 18 P.3d 1265 (2001); *Blue* v. *People*, 223 Ill. App. 3d 594, 596–97, 585 N.E.2d 625 (1992), cert. denied, 506 U.S. 1058, 113 S. Ct. 992, 122 L. Ed. 2d 143 (1993); *Chisholm* v. *Rueckhaus*, 124 N.M. 255, 257–58, 948 P.2d 707, cert. denied, 124 N.M. 268, 949 P.2d 282 (1997).

*Indian River County School Board,* 121 F.3d 576, 582 (11th Cir. 1997), cert. denied, 522 U.S. 1110, 118 S. Ct. 1040, 140 L. Ed. 2d 106 (1998).

"[T]he conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, e.g., to avoid litigating unfounded or vexatious claims." (Internal quotation marks omitted.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut,* supra, 34 Conn. App. 549.

The plaintiff's reliance on *Machadio* v. *Apfel,* 276 F.3d 103 (2d Cir. 2002), for the proposition that his parents properly filed this appeal on his behalf without the aid of an attorney is misplaced. In *Machadio,* the Court of Appeals for the Second Circuit stated that nonattorney parents who meet the basic standards of competency *and* have a sufficient interest in the case could appeal from the denial of an application for supplemental security income (SSI) benefits on behalf of their minor child. Id., 106–107. The court recognized that in addition to the child's interest, a parent's interest in an appeal of the denial of SSI benefits is "squarely at stake"; id., 107; noting that the parent "has a significant stake in the outcome of the litigation because [the child's] qualification for disability benefits will affect the [parent's] responsibility for the expenses associated with [the child's] condition." Id., 106.

The plaintiff's parents in this case do not have an interest at stake. Unlike in *Machadio,* in which the denial of SSI benefits directly impacted the parent's ability to pay the costs related to the child's condition,

the plaintiff's parents in this case were not directly harmed by the court's judgment in favor of the defendants. Accordingly, the plaintiff's parents could not properly "represent" the interests of their minor child in this appeal without an attorney.

III

Having determined that the plaintiff's nonattorney parents cannot represent their minor child without an attorney, we next address whether our granting of the plaintiff's motion to be substituted as the plaintiff and his filing of a pro se appearance after reaching the age of majority cured the defect created when the plaintiff's nonattorney parents brought this appeal without the aid of an attorney. Because the filing of an appeal on behalf of a minor by a nonattorney parent does not implicate subject matter jurisdiction, we conclude that the defect is curable. See *Cheung* v. *Youth Orchestra Foundation of Buffalo, Inc.*, supra, 906 F.2d 61–62.

The defendants rely on our decision in *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, supra, 34 Conn. App. 543, for the proposition that the defect is not curable and that the appeal must be dismissed. In *Expressway Associates II*, we dismissed an appeal brought by a nonattorney general partner on behalf of the partnership because the general partner did not have standing to bring the appeal. Id., 551. We recognized that a nonattorney cannot bring an action in a representative capacity. Id. We dismissed the appeal because of the substantive requirement that "*all* interested parties of a general partnership"; (emphasis in original) id., 551 n.10; be represented in their individual capacities. We recognized that because "[h]aving all the parties in interest before the court invokes subject matter jurisdiction, we cannot adjudicate the interests of parties who are not present." Id., 551–52 n.10. Because all of the parties in interest were not before

us, we dismissed the appeal because we lacked subject matter jurisdiction. Id., 551.

The jurisdictional defect present in *Expressway Associates II* is not present in this case. As we have stated, all the parties in interest in this case are before us. After the plaintiff's parents filed this appeal, the plaintiff reached the age of majority and was presumed competent to represent himself. Prior to oral argument before this court, the plaintiff filed an appearance. At oral argument, the defendants' attorney stated that she did not object to the plaintiff's being substituted as the named plaintiff.[3] Accordingly, because all of the parties in interest are before us, our decision in *Expressway Associates II* is not controlling.

Our Supreme Court's decision in *Phoebe G.* v. *Solnit,* 252 Conn. 68, 77–79, 743 A.2d 606 (1999), reveals that the filing of this appeal by the plaintiff's parents without an attorney is a curable defect. In *Phoebe G.,* the Supreme Court reversed the trial court's judgment, which had dismissed the plaintiff's action for lack of subject matter jurisdiction. Id., 71–72. The underlying action in *Phoebe G.* was brought on behalf of the plaintiff through her next friend. Id., 70. Initially, the court noted the general rule that a next friend may not bring an action for a competent person. Id., 77. Relying on its decision in *Orsi* v. *Senatore,* supra, 230 Conn. 466–67, the court found that exceptional circumstances may exist in which a next friend may bring an action on behalf of an individual who is under a conservatorship. See *Phoebe G.* v. *Solnit,* supra, 77–78. The court then remanded the case to the trial court for a determination of whether exceptional circumstances existed to warrant the next friend's bringing the action on the plain-

---

[3] The plaintiff was always the named plaintiff. When he reached the age of majority, however, he no longer needed his parents in their representative capacity to be named in addition.

tiff's behalf. Id., 79. In the alternative, the court noted that the plaintiff's attorney could file an appearance on the plaintiff's behalf and that the next friend could withdraw from the case. Id., 79 n.10.

By allowing an attorney to file an appearance on behalf of the plaintiff, our Supreme Court implicitly found that it was a curable jurisdictional defect for the plaintiff's next friend to have brought the case on her behalf. Accordingly, because the plaintiff in this case, on reaching the age of majority, filed an appearance on his behalf, the initial defect was cured, and we will address the merits of his appeal.

IV

On appeal, the plaintiff claims that the court (1) abused its discretion by failing to consider and evaluate all of the evidence presented at trial, (2) improperly concluded that he alleged that Ramia embellished the actual facts, (3) failed to consider Ramia's admission that he embellished the facts, (4) improperly concluded that Ramia did not communicate a libelous statement, (5) improperly concluded that Ramia did not intend to show that the plaintiff was a liar, (6) improperly found that Ramia did not act with malice or recklessness, (7) improperly concluded that the plaintiff did not suffer damage to his reputation, (8) improperly concluded that Ramia issued a retraction, (9) improperly concluded that Ramia's statement was privileged and (10) improperly concluded that the plaintiff did not operate professionally as a jazz musician. We are not persuaded.

A

The plaintiff claims that the court abused its discretion by failing to consider and evaluate all of the evidence presented at trial.

It is within the discretion of the trier of fact as to what evidence it will consider. *In re Ashley M.*, 82 Conn.

App. 66, 75, 842 A.2d 624 (2004). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Menon* v. *Dux*, 81 Conn. App. 167, 173, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d 743 (2004).

The plaintiff initially claims that it appeared that the court "was attempting to disallow certain evidence, testimony and arguments before they were fully presented." We decline to review his claim because it is briefed inadequately. In support of his claim, the plaintiff merely directs us to excerpts in the trial transcript. He fails to provide us with any legal authority, nor does he provide us with any analysis to support his claim that the court's rulings were improper.

"[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . .

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quota-

tion marks omitted.) *Jellison* v. *O'Connell*, 73 Conn. App. 564, 565–66, 808 A.2d 752 (2002).

The plaintiff also provides specific examples of testimony that he claims were not weighed properly by the court. We have consistently held that it is within the exclusive province of the trier of fact to decide what testimony it will accept or reject. See *Richards* v. *Richards*, 82 Conn. App. 372, 376, 844 A.2d 889 (2004). Furthermore, because the plaintiff did not file a motion for articulation, we have no way of knowing what the court considered. Accordingly, we cannot conclude that the court abused its discretion in evaluating the evidence presented at trial.

B

The plaintiff claims that the court improperly concluded that he alleged that Ramia embellished the actual facts. We disagree.

In its memorandum of decision, the court stated: "While the [plaintiff's parents] allege that Ramia embellished bullet number five, thus creating the inference that the [plaintiff] was a liar, Ramia contends that his addition to number five was only by way of explanation as to the reason the advisors resigned, the reason that he believed to be true at the time he mailed the letter." It is the plaintiff's contention that this statement is contrary to the record.

We will not disturb a finding of fact unless it is clearly erroneous. *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436, 845 A.2d 382 (2004). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks

omitted.) *Efthimiou* v. *Smith,* 268 Conn. 487, 493–94, 846 A.2d 216 (2004).

While testifying, Ramia stated that after learning the reasons why the application to form the jazz club was denied, he wrote a letter to the plaintiff's parents. Ramia informed the plaintiff's parents that one of the reasons that the application was denied was because it had no advisors after its original advisors resigned. Ramia further wrote that the advisors had resigned because the plaintiff had reserved the band room, telling the music chairperson that he had the permission of the jazz club's advisors, when in fact he did not have their permission. Ramia testified that he included in the letter the reason why the advisors resigned to "embellish" why the application to form the jazz club was denied.[4]

At the close of the plaintiff's case, the defendants sought to dismiss the plaintiff's action because he failed to put forth a prima facie case of libel. In arguing against the motion, the plaintiff primarily relied on Ramia's testimony that he "embellished" the facts in the letter. Accordingly, it was not clearly erroneous for the court to state in its memorandum of decision that the plaintiff alleged that Ramia embellished the facts.

C

The plaintiff claims that the court failed to consider Ramia's statement that he embellished the facts. We disagree.

Although Ramia testified that he embellished part of the letter that he sent to the plaintiff's parents about why the application to form the jazz club was denied, he further testified that he intended, by using the word embellish, to convey that he was adding factual detail to the letter, not fictitious information.

---

[4] Ramia testified that he meant "embellish" to mean "put in more detail."

We will not reverse a court's decision on what evidence to consider, absent an abuse of discretion. *In re Ashley M.*, supra, 82 Conn. App. 75. As we have stated: "[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 715, 829 A.2d 8 (2003). Accordingly, we cannot conclude that the court abused its discretion in evaluating Ramia's testimony.

D

The plaintiff claims that the court improperly concluded that Ramia did not communicate a libelous statement. We are not persuaded.

"[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Housing Authority* v. *Charter Oak Terrace/Rice Heights Health Center, Inc.*, 82 Conn. App. 18, 21, 842 A.2d 601 (2004).

"Defamation is comprised of the torts of libel and slander. Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him. . . . Slander is oral defamation. . . . Libel, which we are concerned with in the present case, is written defamation. . . . While all libel was once actionable without proof of special damages, a distinction arose between libel per se and libel per quod. . . . A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. . . . When a plaintiff brings an action

in libel per quod, he must plead and prove actual damages in order to recover. . . .

"Libel per se, on the other hand, is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . The distinction between libel per se and libel per quod is important because [a] plaintiff may recover general damages where the defamation in question constitutes libel per se. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it. . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him. . . . Whether a publication is libelous per se is a question for the court." (Citations omitted; internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 851–52, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003). With those general principles in mind, we will address each of the court's holdings.

1

In its memorandum of decision, the court determined that the plaintiff failed to establish his claim of libel per se because there was no evidence presented to show that the statement contained in Ramia's letter to the plaintiff's parents was intended to injure the plaintiff and that the plaintiff, as a student, had not "reached that stage in life where one might say he was engaged in the practice of a profession or calling." After carefully reviewing the record, we conclude that the court's conclusion was legally and logically correct.

"[L]ibel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated

to cause injury to one in his profession or business. . . . Libel . . . is also actionable per se if it charges a crime involving moral turpitude or to which an infamous penalty is attached." (Citations omitted; internal quotation marks omitted.) *Miles* v. *Perry*, 11 Conn. App. 584, 601–602, 529 A.2d 199 (1987).

The court properly found that the plaintiff was not engaged in a practice or calling at the time Ramia's letter was sent to the plaintiff's parents. The plaintiff was thirteen years old at the time and a freshman in high school. Although there is evidence in the record that subsequent to the letter being sent, the plaintiff started a band and had some of his music copyrighted, there is nothing in the record to indicate that the plaintiff was paid for performing his music. Thus, there is nothing in the record to indicate that when Ramia's letter was sent to the plaintiff's parents, the plaintiff, a student, was engaged in a practice or calling, as opposed to a hobby. Furthermore, Ramia testified that his intent in sending the letter was to inform the plaintiff's parents of the reasons why the application to form the jazz club was denied, not to injure the plaintiff. We conclude that the court properly found that the plaintiff failed to prove intent to injure, and therefore failed to establish his case of libel per se.

2

The court also concluded that the plaintiff failed to prove his claim of libel per quod because he failed to prove any damages. As we have stated, a plaintiff "must plead and prove actual damages in order to recover" in an action for libel per quod. (Internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, supra, 77 Conn. App. 852; see also *DeMorais* v. *Wisniowski*, 81 Conn. App. 595, 604, 841 A.2d 226, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004). There was no evidence presented to the court as to any actual

damages suffered by the plaintiff. Accordingly, the court properly concluded that the plaintiff failed to prove his claim of libel per quod.

E

The plaintiff claims that the court's conclusion that Ramia did not intend to show that the plaintiff was a liar was incorrect because the court improperly failed to consider Ramia's testimony that he did intend to show that the plaintiff was a liar. We disagree.

It is within the discretion of the trier of fact what evidence it will consider; *In re Ashley M.*, supra, 82 Conn. App. 75; and it is within the exclusive province of the trier of fact to decide what testimony it will accept or reject. *Richards* v. *Richards*, supra, 82 Conn. App. 376. Accordingly, we conclude that the court did not abuse its discretion.

F

The plaintiff claims that the court improperly concluded, on the basis of its finding that Ramia had not acted with malice and recklessness, that the plaintiff was not entitled to damages. We disagree.

Contrary to the plaintiff's claim, the record does not reveal that Ramia's actions were "calculated" to "create a falsehood" about the plaintiff. "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false." *Woodcock* v. *Journal Publishing Co.*, 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied, 513 U.S. 1149, 115 S. Ct. 1098, 130 L. Ed. 2d 1066 (1995). Ramia's testimony was consistent throughout this case. He testified that at the time he wrote the letter to the plaintiff's parents, he thought that its contents were true and that it was not until later that he learned of their falsity. Accordingly, there is no evidence to support the plaintiff's claim that Ramia knew

that the letter was false when he wrote it. Furthermore, there is no evidence to support the plaintiff's claim that the statement in the letter was made with reckless disregard for its truth. Ramia's testimony was that before he sent the letter to the plaintiff's parents, he conducted an investigation concerning why the jazz club application was denied and that he had no reason to believe that the information provided to him was inaccurate. We conclude that the court properly found that Ramia did not act maliciously or recklessly in sending the letter to the plaintiff's parents.

## G

The plaintiff claims that the court improperly concluded that he was not entitled to damages because he did not suffer damage to his reputation. Specifically, the plaintiff claims that the contents of the letter that Ramia sent to his parents were libel per se, thereby negating the requirement that he prove injury to his reputation. As we concluded in part IV D 1, the letter that Ramia sent was not libel per se. Accordingly, the plaintiff's claim fails.

## H

The plaintiff claims that the court improperly concluded that Ramia had issued a retraction. We disagree.

The following facts are relevant to our resolution of the plaintiff's claim. On October 25, 1999, Ramia sent the letter to the plaintiff's parents indicating the reasons why the jazz club application was denied. On October 29, 1999, the plaintiff's parents sent a letter to Ramia. In the letter, the plaintiff's parents informed Ramia that their family was "deeply shocked, hurt and saddened by this false accusation" that the plaintiff had informed the music chairperson that he had permission to use the band room when, in fact, he did not. Nowhere in

the letter did the plaintiff's parents ask Ramia to retract that statement.

Subsequently, on February 4, 2000, the Shelton corporation counsel sent a letter to the plaintiff's attorney, which stated: "Upon investigation, it appears that one faculty member did give [the plaintiff] permission to use the room. It also appears that the confusion arose because that faculty member did not follow the appropriate procedures for reserving the room."

In its memorandum of decision, the court, assuming that the October 29, 1999 letter that the plaintiff's parents sent to Ramia was a request for a retraction, found that the letter sent to the plaintiff's attorney from the corporation counsel amounted to a retraction.

"[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Housing Authority* v. *Charter Oak Terrace/Rice Heights Health Center, Inc.*, supra, 82 Conn. App. 21.

It is the plaintiff's contention that review of the letter will show that "Ramia did not retract his statement . . . ." Assuming, as the court did, that the October 29, 1999 letter was a request for a retraction, we conclude that the letter from the corporation counsel was a retraction. A retraction, in the law of defamation, is the "formal recanting of the defamatory material. . . ." Black's Law Dictionary (6th Ed. 1990). The letter to the plaintiff's attorney clearly stated that the plaintiff did in fact have permission to use the band room and that the initial letter that Ramia sent to the plaintiff's parents "was based upon erroneous information given to Mr. Ramia by one of the staff members." The letter also stated that Ramia already had provided that information

to the plaintiff's father. Accordingly, the court properly found that Ramia issued a retraction.

## I

The plaintiff claims that the court improperly found that the statement made by Ramia was privileged. We are not persuaded.

In its memorandum of decision, the court, applying the factors set forth in *Miles* v. *Perry*, supra, 11 Conn. App. 584, found that communications between educators and the parents of a student are subject to a conditional privilege.[5] The court, noting that a conditional privilege does not exist if the remarks are made with malice, improper motive or lack of good faith, then found that Ramia did not act with malice or recklessness.

The plaintiff does not challenge the court's finding that a conditional privilege exists for communications between an educator and the parents of a student. Rather, it is the plaintiff's contention that the court improperly concluded that the statement made by Ramia was privileged because it was made with malice and that Ramia acted with "intent to harm, knowing that his statement was false." As we concluded in part IV F, Ramia did not act with malice or recklessness when he sent the letter to the plaintiff's parents. Accordingly, the court's finding that a conditional privilege existed was not improper.

## J

The plaintiff claims finally that the court improperly concluded that he was not engaged professionally as a

---

[5] In *Miles* v. *Perry*, supra, 11 Conn. App. 595, we noted that there are five prerequisites in order to establish that a conditional privilege exists: "The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only."

jazz musician. As we concluded in part IV D 1, the court properly concluded that the plaintiff was not a professional jazz musician when Ramia sent the letter to his parents. Accordingly, the plaintiff's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.