# JOHN DEMORAIS ET AL. *v.* JOSEPH WISNIOWSKI ET AL.
## (AC 23303)

Lavery, C. J., and DiPentima and Peters, Js.

Argued October 27, 2003—officially released February 24, 2004

*Joseph B. Burns*, with whom, on the brief, was *Putnam H. Perry*, for the appellants-appellees (plaintiffs).

*Robert A. Ziegler*, with whom, on the brief, was *Jeffrey M. Knickerbocker*, for the appellees-appellants (defendants).

*Opinion*

LAVERY, C. J. The plaintiffs, John DeMorais and Sharon DeMorais, appeal and the defendants, Joseph Wisniowski and Stanley Wisniowski, cross appeal from the judgment of the trial court. The plaintiffs claim that the court improperly denied their motion to set aside the verdict. Specifically, the plaintiffs argue that the defendants failed to introduce sufficient evidence to support a finding of $50,000 in economic damages pursuant to their counterclaim for libel per quod. The defendants, in their cross appeal, claim that the court improperly denied their motion for a directed verdict on the plaintiffs' complaint. Specifically, the defendants argue that the court improperly submitted to the jury

the issues of (1) whether a fiduciary relationship existed between the parties and was subsequently breached by the defendants, and (2) whether the defendants breached the restrictive covenant at issue.[1] As to the plaintiffs' appeal, we reverse the judgment of the trial court only as to damages and remand the matter for a hearing in damages limited to the question of attorney's fees. We reverse the judgment of the trial court with respect to the defendants' cross appeal only as to the jury's findings that the defendants breached a fiduciary relationship with the plaintiffs and breached a restrictive covenant.

The jury reasonably could have found the following facts. The defendants purchased property in the town of Berlin (town) and sought affordable housing subdivision approval from the planning commission (commission). The commission was ordered to approve the subdivision. See *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 304, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995).

In July, 1998, the plaintiffs became interested in purchasing a lot to build a home in the defendants' subdivision which was known as Arbor Commons. John DeMorais expressed his interest in obtaining a house that was located on a cul-de-sac. After several meetings, the parties executed, in January, 1999, an option contract for the plaintiffs to purchase lot 4-19. In July, 1999, the plaintiffs exercised the option and purchased the lot.

In August, 1999, the plaintiffs contacted MBA Engineering Company to build their house on lot 4-19. In

---

[1] The defendants also claim that the jury's award of economic damages was improper due to the lack of sufficient evidence and that the jury's award of damages should have been reduced by the finding of 49 percent of liability on the part of the plaintiffs. On the basis of our resolution of the first two issues of the defendants' cross appeal, we need not decide those claims.

October, 1999, construction of the plaintiffs' house proceeded to the framing stage. At that point, the plaintiffs noticed the location where the defendants were building a house on lot 4-20, an adjacent lot to the north. The plaintiffs had not expected the house on lot 4-20 to be built in the position that it was in. Specifically, they objected to the fact that the house on lot 4-20 was not facing the street, but instead faced the plaintiffs' front yard.

John DeMorais immediately called Joseph Wisniowski to complain about the "awkward" placement of the house on lot 4-20. The plaintiffs were upset because the placement of the house on lot 4-20 did not match the preliminary drawings and layout of the subdivision that the defendants previously had shown them. Repeated telephone conversations during October, 1999, failed to resolve the problem, and the relationship between the parties steadily deteriorated. Despite the plaintiffs' complaints, both homes were completed without alteration.

The plaintiffs moved into their home during the spring of 2000. In June and July, 2000, Sharon Demorais started to attend meetings of the commission to complain about the subdivision. The plaintiffs thereafter filed suit, alleging multiple causes of action for the reduction in value of their residence. The jury returned a verdict for the plaintiffs on three counts of the complaint. It awarded $30,000 for the breach of the defendants' fiduciary duty, $30,000 for the breach of the restrictive covenant and $35,000 for negligent misrepresentation with an additional finding of 49 percent comparative negligence on the part of the plaintiffs.[2]

The defendants also filed a five count counterclaim, which set forth claims of breach of restrictive covenant,

[2] The jury found in favor of the defendants with respect to the count of the plaintiffs' complaint that alleged unfair trade practices.

libel and slander, wilful, wanton and malicious conduct, breach of the implied obligations of good faith and fair dealing and invasion of privacy. The jury returned a verdict in favor of the defendants with respect to the claim of libel per quod, awarding $50,000 in damages, and invasion of privacy, awarding $15,000 in damages.[3]

Both parties filed motions to set aside the verdict. The defendants also filed a supplemental motion to set aside the verdict, as it reflected multiple recoveries for the same injury. The court denied the motions to set aside the verdict, but granted the defendants' supplemental motion to set aside the verdict. The court, in ruling on the defendants' supplemental motion, concluded that the jury had made inconsistent findings of economic damages. The jury found damages in the amount of $30,000 for both the breach of fiduciary duty and the breach of the restrictive covenant, and $35,000 for negligent misrepresentation. The court determined, however, that the inconsistency with respect to the negligent misrepresentation count was not significant because the jury's finding of comparative negligence by the plaintiffs reduced the negligent misrepresentation award. The court then stated that the plaintiffs were not entitled to three recoveries for the same injury and concluded that there was sufficient evidence for the jury to have found that the value of the plaintiffs' home was reduced by $30,000. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

I

PLAINTIFFS' APPEAL

The plaintiffs claim that the court improperly denied their motion to set aside the verdict. Specifically, the plaintiffs argue that the defendants failed to introduce

---

[3] The plaintiffs have not challenged the jury's finding of invasion of privacy, and the defendants have not challenged the jury's finding of negligent misrepresentation.

sufficient evidence to support a finding of $50,000 in economic damages for the defendants' counterclaim of libel per quod. We agree.

As a preliminary matter, we set forth the standard of review. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003). We also note that "[w]hile it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.) *Mips* v. *Becon, Inc.*, 70 Conn. App. 556, 559, 799 A.2d 1093 (2002).

The following additional facts are necessary for our resolution of the plaintiffs' claim. The defendants had a contentious and hostile relationship with town officials. In the summer of 2000, the plaintiffs began attending various meetings of the commission to complain about the defendants and their failure to complete the subdivision. Additionally, Sharon DeMorais drafted several letters and petitions that were signed by the

residents of the subdivision.[4] Specifically, the plaintiffs complained that there was sewage in the streets, and that the defendants had failed to install storm drains and to grade and pave certain areas, which caused water problems within the subdivision.[5] The plaintiffs also claimed that the standing pools of water in the subdivision created a breeding location for mosquitoes that were carriers of the West Nile virus.

At one meeting, Sharon DeMorais stated that Joseph Wisniowski had "stolen her money," including her retirement fund and life savings. She also claimed that sewage was flowing through the streets of the subdivision. Furthermore, the plaintiff informed the commission that Joseph Wisniowski was not conducting any activity to complete the subdivision, had failed to make any of the necessary improvements, and that the bank that had provided the mortgage loan for Arbor Commons should revoke the defendants' bond and take over the construction of the subdivision.

The defendants disputed the veracity of those claims. The record reveals that there was never any evidence that sewage ran through the streets, that mosquitoes carrying the West Nile virus were present in the subdivision or that the defendants had "stolen" the plaintiffs' money. Furthermore, Joseph Wisniowski stated that the subdivision was planned, approved and bonded at all times, and that the construction had proceeded within an appropriate time frame. Additionally, the water problems were both expected and temporary in

[4] The plaintiffs also contacted the defendants' bank to register concern about the defendants' ability to complete the subdivision.

[5] On May 11, 2000, the department of environmental protection's bureau of water management alerted the defendants to various problems with the subdivision and ordered corrective measures. The matter currently is in litigation. The defendants also received a municipal citation on May 22, 2000, and were fined $150 for erosion and sedimentary control violations at the subdivision.

nature. The defendants incurred legal fees in the amount of $4000 to $5000 to defend against the allegations that were raised at the hearings.

In July, 2001, the construction of the subdivision was not complete. The town refused to issue a building permit for lot 4-28, in effect preventing the sale of that property. The town refused to issue the permit because the subdivision plan required that the defendants complete various improvements to Kensington Road. On August 16, 2001, Joseph Wisniowski and the town entered into an agreement by which the building permit would issue and the defendants agreed immediately to commence and complete improvements to Kensington Road. As a result of that agreement with the town, the defendants incurred additional expenses. Joseph Wisniowski testified that as a result of the agreement, he sustained additional costs of between $70,000 and $100,000. Furthermore, he stated that the town had not raised any concerns about Kensington Road until after the plaintiffs started their campaign against the defendants.

The defendants, in their counterclaim, sought to obtain relief by alleging slander and libel per se and slander and libel per quod. The jury awarded no damages for the defendants' claims of slander and libel per se; instead, it found in favor of the defendants with respect to the claims of libel and slander per quod and awarded special damages in the amount of $50,000.

On appeal, the plaintiffs have not challenged the jury's finding of libel and slander per quod. It is clear that the jury reasonably could have found that the plaintiffs knew that their complaints to the town were not true or they were made in reckless disregard for the truth and thereby were defamatory. We also agree that the defendants produced sufficient evidence to support a finding of actual damages for legal fees in the amount

of $4000 to $5000. What is less clear, and what we must determine, is whether there was sufficient evidence that the defendants' costs associated with the improvements that were done as required by the 2001 agreement with the town were connected to the conduct of the plaintiffs. We conclude that there was insufficient evidence to connect those costs to the tortious conduct of the plaintiffs. Because it is not the function of this court to find facts, we must remand the matter to the trial court for a hearing in damages limited to the sole issue of the specific amount of attorney's fees, if any, incurred by the defendants in defending themselves from the plaintiffs' defamatory statements.[6]

At this point, a review of certain legal principles will facilitate our discussion. "While all libel was once actionable without proof of special damages, a distinction arose between libel per se and libel per quod. . . . A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. . . .

"Libel per se, on the other hand, is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . The distinction between libel per se and libel per quod is important because [a party] may

---

[6] "Defamation is comprised of the torts of libel and slander. Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him. . . . Slander is oral defamation. . . . Libel . . . is written defamation." (Citation omitted; internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 851–52, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003).

In the present case, the defendants presented evidence that the plaintiffs had committed both slander per quod and libel per quod. Although we focus our discussion on the tort of libel per quod, we note that the same analysis applies to the tort of slander per quod. See *DeVito* v. *Schwartz*, 66 Conn. App. 228, 236, 784 A.2d 376 (2001).

recover general damages where the defamation in question constitutes libel per se." (Internal quotation marks omitted.) *Lega Siciliana Social Club* v. *St. Germaine*, 77 Conn. App. 846, 852, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003). In short, "[w]hen a plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover. D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 146." *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 491, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987).

In the present case, the defendants voluntarily entered into an agreement with the town to obtain a building permit for lot 4-28 in exchange for the immediate completion of improvements required by the site plan. If the defendants were unhappy with the costs associated with that agreement, the proper party from which to seek redress was the town, not the plaintiffs. The agreement expressly provided that the defendants retained any rights or claims against the town.[7] There was no evidence that the defamatory statements made by the plaintiffs at the meetings were linked or connected to the costs of the improvements that were required by the subdivision plan and that the defendants agreed to "immediately commence" to obtain a building permit.

Furthermore, public policy concerns support our conclusion. The plaintiffs had a right to ensure that the subdivision was completed according to the specifications of the approved plan. The town was the proper authority to which the plaintiffs could raise such concerns and ensure that the subdivision plan was followed. To allow the defendants to label the Kensington Road improvements as the actual damages required by

---

[7] Paragraph four of the agreement states that "[e]xcept as recited herein, neither party waives any rights or claims it may have against the other party."

their claim for libel per quod would have a chilling effect on citizens participating at such hearings, contrary to public policy. See *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 739–42, 724 A.2d 1108 (1999). While the plaintiffs did, in fact, make defamatory statements to the commission, those statements were not related to the costs for improving Kensington Road as required by the site plan. In this case, the plaintiffs were entitled to bring their valid and legitimate concerns regarding compliance with the approved subdivision plan without the fear of being subjected to a defamation cause of action.

We conclude that the defendants failed to provide any evidence that supported the finding by the jury of actual damages in the amount of $50,000. We remand the matter to the trial court for a hearing in damages to determine the specific amount, if any, of attorney's fees incurred by the defendants in defending against the plaintiffs' defamatory statements, which were the only material damages proved.

## II

## DEFENDANTS' CROSS APPEAL

The defendants raise two issues in their cross appeal.[8] Specifically, the defendants argue that the court improperly denied their motion for a directed verdict, and should not have submitted to the jury the allegations of a breach of fiduciary duty and a breach of the restrictive covenant. We agree.

"As an initial matter, we set forth our standard of review. [Appellate] review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the

---

[8] See footnote 1.

light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . A jury's verdict should be set aside only where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . A verdict should not be set aside where the jury reasonably could have based its verdict on the evidence." (Citation omitted; internal quotation marks omitted.) *Conigilo* v. *White*, 72 Conn. App. 236, 240, 804 A.2d 990 (2002). We address each of the defendants' claims in turn.

## A

The defendants first claim that the court improperly denied their motion for a directed verdict with respect to the issue of a fiduciary duty. Specifically, the defendants argue that the court, as a matter of law, should not have submitted the question of the existence of a fiduciary duty to the jury. We agree.

"It is well settled that a fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . Although this court has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . we have recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary." (Citations omitted; internal quotation marks omitted.) *Macomber* v. *Travelers*

*Property & Casualty Corp.*, 261 Conn. 620, 640, 804 A.2d 180 (2002).

Our Supreme Court's opinion in *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 761 A.2d 1268 (2000), is instructive. In that case, the court stated: "In the cases in which this court has, as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." Id., 39; see also *Hemingway* v. *Coleman*, 49 Conn. 390, 392 (1881). Furthermore, "[t]he law will imply [fiduciary responsibilities] only where one party to a relationship is unable to fully protect its interests [or where one party has a high degree of control over the property or subject matter of another] and the unprotected party has placed its trust and confidence in the other." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 41.

In the present case, the record discloses that the parties were engaged in an arm's length transaction. Arbor Commons was the defendants' first subdivision project, and John DeMorais testified that he previously had purchased a condominium and a multifamily home with his mother. This was not, therefore, a case involving a savvy, well established developer and an inexperienced individual who was purchasing property for the first time. The plaintiffs did not utilize the defendants' services to build their home; instead they selected MBA Engineering Company. Furthermore, the record reveals that the plaintiffs changed the position of their house on the lot without informing the defendants.[9] Those

---

[9] The terms of the restrictive covenant provide in relevant part: "No building or structure of any kind shall be built, constructed, erected or placed on any of said lots until after submission and written approval from [the defendants] . . . ." Despite the breach of that covenant by the plaintiffs, the defendants took no action against the plaintiffs and permitted them to proceed with the construction of the house.

actions indicate that the plaintiffs did not relinquish control to the defendants. As our Supreme Court has stated, "[t]he fact that one business person trusts another and relies on [the person] to perform [his or her obligations] does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty." (Internal quotation marks omitted.) Id.

In sum, the plaintiffs failed to produce evidence of a "unique degree of trust and confidence between the parties such that the defendants undertook to act primarily for the benefit of the plaintiff[s]." (Internal quotation marks omitted.) Id. We conclude, therefore, that the record, as a matter of law, was inadequate to support the finding of a fiduciary relationship and that the court improperly denied the defendants' motion for a directed verdict.

### B

The defendants next claim that the court improperly denied their motion for a directed verdict with respect to the issue of the breach of a restrictive covenant. Specifically, the defendants argue that the court, as a matter of law, should not have submitted the question of the breach of a restrictive covenant to the jury. We agree with the defendants.

The following additional facts are necessary for the resolution of the defendants' claim. On April 27, 1999, the defendants executed a "Declaration of Restrictive Covenants" as the owners of the subdivision. The five page document set out the purpose of the covenant in three "whereas" paragraphs, and fifteen numbered paragraphs that described the covenant's limitations and restrictions.

At the outset, we set forth the applicable standard of review. "[T]he determination of the intent behind language in a deed, considered in the light of all the

surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . .

"The meaning and effect of the [restrictive covenant] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." (Citation omitted; internal quotation marks omitted.) *Wood* v. *Amer*, 54 Conn. App. 601, 604–605, 736 A.2d 162 (1999), aff'd, 253 Conn. 514, 755 A.2d 175 (2000).

This court previously has described uniform covenants. "[W]e are dealing with uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme. With respect to this type of covenant, any grantee under a general or uniform development scheme may enforce the restrictions against any other grantee. . . . The doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance on the uniform development plan being carried out. While that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner who is also subject to the same restriction to violate it." (Citations omitted; internal quotation marks

omitted.) *Mannweiler* v. *LaFlamme*, 46 Conn. App. 525, 535–36, 700 A.2d 57, cert. denied, 243 Conn. 934, 702 A.2d 641 (1997).

In the present case, the plaintiffs do not contend that the defendants violated any of the enumerated paragraphs in the covenant. Instead, they cite the third "whereas" clause, which states: "Whereas, it is the desire and intention of [the defendants] to impose on said property mutual beneficial restrictions under a general scheme of improvement for the benefit of each and all of the separate lots." Specifically, the plaintiffs claim that the "awkward" placement of the house on lot 4-20 breached the requirement that the defendants act "for the benefit of each and all of the separate lots." The plaintiffs further argue that all of the provisions contained in the covenant had to be considered and, therefore, the court properly presented to the jury the question of whether the defendants breached the covenant.

As a general rule, "[r]ecitals in a contract, such as 'whereas' clauses, are merely explanations of the circumstances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract. . . ." 17A C.J.S., Contracts § 317 (1999). Although our research has not revealed any appellate authority[10] in this state expressly adopting that rule, such authority exists in other jurisdictions. See, e.g., *Aramony* v. *United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) ("we have held that [a]though a statement in a whereas clause may be useful in interpreting an ambiguous operative clause in a contract, it cannot create any right beyond those arising

---

[10] In *Grossman* v. *Grossman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 167560 (September 29, 2000), the court held that "[a whereas] clause functions as an introduction" and that it was unnecessary to use the clause to determine the intent of the parties when the operative language of the contract was clear.

from the operative terms of the document" [internal quotation marks omitted]); accord *Engineered Data Products, Inc.* v. *Nova Office Furniture, Inc.*, 849 F. Sup. 1412, 1417 (D. Colo. 1994); *Johnson* v. *Johnson*, 725 So. 2d 1209, 1212 (Fla. App.), review denied, 735 So. 2d 1285 (Fla. 1999); *Jones* v. *Paducah*, 283 Ky. 628, 632, 142 S.W.2d 365 (Ky. App. 1940); *McKinnon* v. *Baker*, 220 Neb. 314, 317, 370 N.W.2d 492 (1985); *Rubenstein Bros.* v. *Ole of 34th Street, Inc.*, 101 Misc. 2d 563, 567, 421 N.Y.S.2d 534 (1979). We agree with that rule set forth by those courts.

In the present case, the operative provisions of the covenant were the enumerated paragraphs[11] that followed the general "whereas" clauses. The language of the covenant supports that interpretation. "Said limitations, restrictions, covenants and conditions are as follows . . . ." That sentence appears after the "whereas" clauses and immediately precedes the enumerated paragraphs. We conclude that the clear and unambiguous terms of the covenant provided that the operative terms were contained in the enumerated paragraphs. The "whereas" clauses merely provided an explanation of the circumstances of the execution of the covenant and were not binding obligations, nor were they necessary to clarify the intent of the parties. There was no evidence that the defendants had violated any of the enumerated paragraphs, which were the operative clauses of the covenant. Accordingly, we conclude that court improperly denied the defendants' motion for a directed verdict.

On the plaintiffs' appeal, the judgment is reversed only as to the award of damages to the defendants and the case is remanded for a hearing in damages as to the

---

[11] Those paragraphs describe general regulations that apply to all of the lot owners within the subdivision and prohibit, among other things, farm animals, clotheslines, fences, certain types of signs and commercial activity. Approval of the building and site plans was retained by the defendants.

amount of attorney's fees incurred by the defendants in defending against the plaintiffs' defamatory statements. On the defendants' cross appeal, the judgment is reversed as to the findings that the defendants breached a fiduciary duty and breached a restrictive covenant and the case is remanded with direction to render judgment for the defendants as to those counts and for further proceedings in accordance with law.

In this opinion the other judges concurred.