## JAMES J. ARNOLD ET AL. *v.* JOHN W. HOFFER, TRUSTEE, ET AL.
### (AC 26134)

Flynn, Bishop and Hennessy, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 1, 2005—officially released February 28, 2006

*Frances Codd Slusarz*, with whom were *Timothy M. Herring* and, on the brief, *Ward J. Mazzucco*, for the appellants (plaintiffs).

*Thomas W. Beecher*, for the appellee (named defendant).

*Opinion*

BISHOP, J. This appeal involves the interpretation of a restrictive covenant in a subdivision in which the parties own real property. The plaintiffs, James J. Arnold, Catherine A. Arnold and Covenant Construc-

tion, LLC (Covenant), appeal from the summary judgment rendered by the trial court in favor of the defendant John W. Hoffer, trustee.[1] The plaintiffs claim that the court improperly interpreted the restrictive covenant. We affirm the judgment of the trial court.

The following undisputed facts, gleaned from the pleadings and the evidence submitted by the parties in conjunction with their respective motions for summary judgment, are relevant to the disposition of the plaintiffs' appeal. The Arnolds hold title to residential property in Danbury. The defendant owns land abutting the property at issue. The parties' properties are located in the West Terrace subdivision, which is comprised of more than 200 lots originally conveyed from the West Terrace Realty Corporation (corporation). From approximately 1925 to 1953, the corporation sold lots, bundled as multilot parcels, in the West Terrace subdivision to various grantees. Although the West Terrace deeds from 1925 and part of 1926 contain no restrictions, most West Terrace deeds after 1926 contain four or five restrictive covenants. The lots at issue were conveyed subject to a restrictive covenant stating that "there shall not be erected on the premises hereby conveyed or on any part thereof, any building (other than a one story garage) except a detached dwelling house, for the use and occupancy of one family." The same or substantially similar language appears in nearly all of the deeds from the corporation subsequent to 1926.[2]

[1] The plaintiffs also named as defendants all unknown persons claiming or who may claim any right, title or interest in the property at issue. Those defendants subsequently were defaulted for failure to appear. We therefore refer in this opinion to Hoffer as the defendant.

[2] The other restrictive covenants contained in the West Terrace deeds concern building setbacks, restrictions on commercial uses of the property, the right of the corporation to repurchase the property if the grantee should sell, and language that either identifies the firm that is permitted to construct any improvements or requires the corporation's approval for any improvements.

Although the Arnolds' parcel is comprised of six lots, they obtained title to their parcel in a single conveyance on October 1, 1997. On September 17, 2002, the Arnolds subdivided their property into two parcels, parcel A and parcel B. Parcel A is improved by the Arnolds' home, a single-family dwelling, and parcel B is unimproved. Covenant has a contract to purchase parcel B from the Arnolds, on which it desires to build a single-family detached dwelling house.

The plaintiffs commenced this action seeking declaratory and injunctive relief. Specifically, they sought a declaration that the building of a detached single-family dwelling on parcel B would not violate the restrictive covenant and that the restrictive covenant is no longer valid due to changes in the neighborhood, laches or failure to enforce the restriction.[3] The plaintiffs also sought an injunction preventing the defendant from interfering with the plaintiffs' construction of a single-family dwelling on parcel B. Agreeing that there were no genuine issues of material fact, both parties filed motions for summary judgment. After a hearing on both motions, the court granted the defendant's motion for summary judgment. By memorandum of decision filed December 9, 2004, the court found that "the language of the restrictive covenant is a limitation on both the *type* of building and the *number* of buildings that may be erected on the premises." (Emphasis in original.) This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiffs claim that the court improperly interpreted the restrictive covenant as a limitation

[3] Because the plaintiffs did not pursue their claim of laches before the trial court, we do not address it. As to their claim of changes in the neighborhood, they did not raise that issue in their motion for summary judgment. Additionally, the plaintiffs concede, in their reply brief, that they are not claiming that the restrictive covenant has been abandoned.

on the number of buildings that may be erected on the plaintiffs' property.[4] We disagree.

Established principles guide our determination of the appropriate scope of review of the plaintiffs' claim. "Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant the . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 234, 884 A.2d 427 (2005), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006).

"[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is [also] plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . The meaning and effect of the [lan-

---

[4] The plaintiffs also claim that genuine issues of material fact existed as to whether there was a uniform plan of development. In their motion for summary judgment, however, the plaintiffs stated that there was no dispute that there was a uniform plan of development. Additionally, at oral argument before this court, the plaintiffs conceded that they are not disputing the existence of a uniform plan of development, but they are contending that the covenant has not been uniformly enforced. Accordingly, we need not address that claim.

guage in the deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances." (Internal quotation marks omitted.) *Simone* v. *Miller*, 91 Conn. App. 98, 108–109, 881 A.2d 397 (2005).

In the present case, as noted, the corporation consistently included the restrictive covenant in essentially all of the subdivision deeds, reflecting a general development scheme. Under such a scheme, any grantee may enforce the restrictions against any other grantee. *DeMorais* v. *Wisniowski*, 81 Conn. App. 595, 609, 841 A.2d 226, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004). That equitable right "springs from the presumption that each purchaser has paid a premium for the property in reliance on the uniform development plan being carried out." (Internal quotation marks omitted.) Id. It is inequitable to permit one landowner who is also subject to the same restriction to violate it. Id. Because the parties agree that the corporation intended the West Terrace subdivision to be a uniform development of noncommercial, single-family homes, the sole issue for determination is whether the restrictive covenant limits the number of houses that a property owner can build on land it obtains in a single conveyance. To resolve that question, we examine the language of the deed and the development of the subdivision.

We begin with the language itself. The plaintiffs maintain that the phrase "a detached dwelling house, for the use and occupancy of one family" limits the type, but not the number of houses that might be built on the property. The defendant claims that the restriction governs both the type and the number of houses that may be built. Although the indefinite article "a" is

defined as imposing a numerical limitation,[5] this court has stated that the article "a" may or may not impose a numerical limitation. *Contegni* v. *Payne*, 18 Conn. App. 47, 66, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).[6] Because the language alone is not conclusive as to whether the corporation intended to limit the number of houses constructed on property transferred in a single conveyance, we examine the surrounding circumstances and the development of the subdivision to illume the intent of the corporation in framing that restriction.

There were two instances in which corrected deeds were recorded to allow for the construction of more than one house on property transferred in a single conveyance. In 1950, the original deed from the corporation to the New England Homes Building Corporation conveyed seven lots and was subject to the standard restriction at issue in this case. The corrected deed, recorded a few months later, specifically stated: "This deed is to correct an error in the Covenants and Restrictions set forth in a deed between the parties . . . ." In the corrected deed, the language stated: "[T]here shall not be erected on the premises hereby conveyed more than

---

[5] The indefinite article "a" is used "before singular nouns when the referent is unspecified"; Merriam-Webster's Collegiate Dictionary (10th Ed. 1993); or "as a function word to suggest limitation in number." Webster's Third International Dictionary.

[6] In *Contegni*, this court looked at several slightly different permutations of the language of a restrictive covenant, including language nearly identical to the language in this case. The restrictive covenant provided for "a dwelling house arranged for and occupied by a single family . . . ." (Internal quotation marks omitted.) *Contegni* v. *Payne*, supra, 18 Conn. App. 50. The court found that the restrictive covenant was a limitation on both the type and number of buildings that could be constructed on the property. Id., 66.

The *Contegni* court also concluded that the phrase "part of parcel" was intended to ensure that continued enforceability of the covenants in the event of a judicial partition of the property. Id. Similarly, in this case, we conclude that the use of the phrase "or on any part thereof" was meant to ensure that the restriction would apply to any later subdivided portion of the property.

two (2) detached dwelling houses, nor of a less cost than Five Thousand Dollars ($5,000.00) each, (except that a one story garage for each of the dwellings aforementioned may be erected upon said premises)." That transaction, specifically permitting the construction of two dwellings on property conveyed in a single transaction, is an indication that the corporation intended the original restriction, identical to the restriction in the present case, to limit the number of houses to one on the entire parcel conveyed.

Also persuasive is a subsequent transaction in which the corporation conveyed ten lots to Robert R. Goodfellow and Harry L. Ashmore. The original deed, recorded in 1953, stated: "There shall not be erected on the premises hereby conveyed or any part thereof any building, except a one or two story dwelling with an attached garage and the same shall cost not less than $10,000.00." The subsequent deed, recorded in 1954, stated that it "intend[ed] to modify the certain restriction contained in said deed to permit the erection upon the premises described therein two dwelling houses with attached garages instead of one as therein provided." That transaction is an indication that the language in the original deed was intended to permit only one house on the conveyed premises.

Contending that the corporation did not intend to restrict the number of houses and that even if it did, the restriction was not uniformly enforced, the plaintiffs refer to instances in which more than one house was built on property conveyed in a single deed. The plaintiffs refer to a recombination of lots on Concord Road that was originally conveyed as a bundle of seven lots. The lots were recombined and three single-family dwellings were constructed on the newly formed lots. The other exception to the restriction referred to by the plaintiffs regards property on Lake Road, which was originally conveyed by two deeds. The first deed con-

veyed a bundle of four lots. The second deed conveyed a bundle of eight lots. The lots were recombined, and four single-family dwellings were built. The construction of the houses on the recombined lots was done in the 1930s.

Despite those divergences, we agree with the court's conclusion that those few exceptions are not sufficient to defeat the restriction that has been followed with substantial uniformity for approximately seventy years.

On the basis of the language of the deed and the facts and circumstances surrounding the development of the West Terrace subdivision, we conclude that the restrictive covenant imposes a limitation on both the type and the number of houses that can be constructed on property transferred in a single conveyance. Accordingly, the court properly concluded that the Arnolds are limited to constructing one house on parcels A and B.

The judgment is affirmed.

In this opinion the other judges concurred.