******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOMEY REALTY CO., INC. *v.* BOZZUTO'S, INC.
(AC 38057)

Alvord, Keller and Pellegrino, Js.

*Argued April 6—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of
Waterbury, Roraback, J.)

*Eric M. Grant*, with whom, on the brief, were *Joseph
P. Yamin* and *Melissa A. Scozzafava*, for the appel-
lant (plaintiff).

*John P. Santucci*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff in this breach of contract action, Tomey Realty Co., Inc., appeals from the judgment of the trial court granting summary judgment on the plaintiff's complaint in favor of the defendant, Bozzuto's, Inc.[1] On appeal, the plaintiff claims that the court erred in granting the defendant's motion for summary judgment because, in doing so, it ignored the operative language of the parties' integrated contractual agreement regarding the lease of commercial property and determined the amount of base rent owed under the lease, as amended, by improperly relying on a "whereas" clause in the preamble of the lease assignment. We reverse the judgment of the trial court.

The following procedural history and facts, which the parties do not appear to dispute, are relevant to this appeal. In August, 2007, the plaintiff entered into a ten year commercial lease agreement (lease) with its tenant, Southbury Food Center of Connecticut, Inc. (Southbury Food). In the first paragraph of section 4 of the lease, the plaintiff and Southbury Food agreed that the base rent for the first four years of the lease would be $216,000 per year, payable in equal monthly installments of $18,000. In the second paragraph of section 4 of the lease, the plaintiff and Southbury Food further agreed that for the fifth year of the lease, the base rent would increase, and Southbury Food would pay as annual base rent the sum of $216,000, plus the cumulative increase in the Consumer Price Index (CPI) over the previous four year period as issued by the United States Department of Labor (fifth year cumulative rent increase).[2]

On May 14, 2012, which was nine months into the fifth year of the lease, the plaintiff, Southbury Food, and the defendant executed a lease assignment (assignment) pursuant to which the defendant replaced Southbury Food as the plaintiff's tenant under the lease.[3] In the preamble, the assignment contained several "whereas" clause provisions, the third of which provided as follows: "WHEREAS; the [current] annual base rent for the period [of] September 1, 2011, to August 31, 2012, is [$216,000 (e.g., $18,000 per month)] . . . ."[4] The assignment further provided, in paragraph 5 of the body of the document, that the plaintiff "is not in default pursuant to any [l]ease provision and [Southbury Food] is not in default of any [l]ease provision and remains current in the payment of all obligations thereunder . . . ." A copy of the lease was attached to the assignment as exhibit A.

Contemporaneously with the execution of the assignment, the plaintiff and the defendant also executed a lease amendment (amendment), which amended, in part, the lease originally entered into by the plaintiff and Southbury Food. At the time the amendment was

executed, nine months of the fifth year of the lease had elapsed. The amendment modified the base rent calculation commencing in the sixth year of the lease as follows: "With respect to Section 4 BASE RENTAL . . . of the [l]ease, the third paragraph therein shall be deleted and replaced with the following: 'Thereafter, the base rental for each year shall increase by 2.5% over the immediately preceding year's base rental and shall be payable in twelve equal monthly installments on the first day of each month without any prior demand, deduction or setoff whatsoever.' " Thus, the rental increases after the fifth year of the lease would no longer track the CPI. The amendment made no other changes to section 4 of the lease and specifically provided that "[e]xcept as provided hereinabove, the remaining terms and conditions of the lease shall remain unmodified and in full force and effect." The amendment did not alter the fifth year cumulative rent increase set forth in the second paragraph of section 4 of the lease. It further stated, in section 1, which deleted and replaced only the third paragraph of section 4 of the lease, that the base rent for each year would increase by 2.5 percent over the immediately preceding year's base rent. When the lease and the amendment are read together, the "immediately preceding year's base rental" refers to the base rental required to be paid in the fifth year of the lease, which includes the fifth year cumulative rent increase. A copy of the lease was attached to the amendment as exhibit A.

As of April 1, 2015, the date on which the court issued its memorandum of decision granting the defendant's motion for summary judgment and denying the plaintiff's motion for summary judgment, the defendant had not paid to the plaintiff, as base rent, any portion of the fifth year cumulative rent increase, which the plaintiff argues became due on September 1, 2012. Instead, commencing on September 1, 2012, the beginning of the sixth year of the lease, the defendant paid an annual increase of 2.5 percent on a base rent of $216,000.

On March 20, 2013, the plaintiff commenced the present action against the defendant, alleging that the defendant had breached the lease due to its failure to pay any portion of the fifth year cumulative rent increase set forth in the second paragraph of section 4 of the lease, which it claimed became due and payable, in twelve equal monthly installments, on September 1, 2012.

On September 12, 2013, the defendant filed its answer, in which it asserted the special defenses of novation, waiver, and estoppel. The defendant also filed a counterclaim alleging that the May 14, 2012 amendment constituted a novation which modified the "rent escalation clause" to "limit increases annually to 2.5 [percent] in the event [Southbury Food] assigned its lease to the defendant."

On November 20, 2014, the defendant filed a motion for summary judgment. The plaintiff also filed a motion for summary judgment on November 24, 2014.[5] On January 7, 2015, the plaintiff filed an objection to the defendant's motion for summary judgment. The court heard oral argument from the parties on their motions for summary judgment on January 12, 2015.

As stated previously, on April 1, 2015, the court issued a memorandum of decision, wherein it granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment.[6] In its memorandum of decision, the court stated in relevant part: "The present dispute revolves around the question of whether under the terms of the [lease, the assignment, and the amendment], [the defendant] is obligated to pay [the plaintiff the fifth year cumulative rent increase] which was provided for in [section] 4 of the [lease]. Both parties . . . moved for summary judgment claiming that they are entitled to judgment as a matter of law.

\* \* \*

"The [fifth year cumulative rent increase] in dispute is defined in the following language in the second paragraph of [section] 4 of the [lease]: For the fifth year of the lease [beginning September 1, 2011], [t]enant agrees to pay [l]andlord . . . base rental at the annual rental amount of [$216,000], plus the cumulative increase in the Consumer Price Index [CPI] . . . over the previous four year period.

"Neither the [assignment] nor the [amendment] make specific reference to the [fifth year cumulative rent increase] despite the fact that at the time these agreements were executed in May, 2012, nine monthly payments incorporating the [fifth year cumulative rent increase] would already have become due under the terms of the [lease].[7] In addition, paragraph 5 of the [assignment] recites that [Southbury Food] is not in default of any lease provision and remains current in the payment of all obligations thereunder. Those obligations are identified in the preamble of the [assignment] as follows: [T]he current annual base rent for the period [of] September 1, 2011, to August 31, 2012, is [$216,000] [e.g., $18,000 per month].

"It is true that generally whereas clauses are merely explanations of the circumstances surrounding the execution of the contract and are not binding obligations unless referred to in the operative provisions of the contract. . . . *DeMorais* v. *Wisniowski*, 81 Conn. App. 595, 610, 841 A.2d 226, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004). In this case, however, the body of the contract provides that [Southbury Food] was current in the very rent whose amount is specified only in the preamble, thereby rendering enforceable the amounts recited in that preamble.

* * *

"Reading together all three of the written agreements whose collective terms the parties have agreed must be interpreted in order to resolve this dispute, there is only one way to reconcile them and give them effect according to their terms. The documents must be interpreted to conclude that the [fifth year cumulative rent increase] in question was not incorporated into either the [assignment] or the [amendment], both of which were signed after the [fifth year cumulative rent increase] had become due." (Footnote in original; internal quotation marks omitted.)

On April 10, 2015, the plaintiff filed a motion to reargue, which the court denied on June 1, 2015. This appeal followed. Additional facts shall be set forth as necessary.

The plaintiff claims that the court erred in granting summary judgment in favor of the defendant because it relied upon the third "whereas" clause in the preamble of the assignment to determine that the amount of base rent due in the fifth year of the lease remained at $216,000 per year. Specifically, the plaintiff argues that (1) the defendant took assignment of the entire lease, including the fifth year cumulative rent increase set forth in the second paragraph of section four of the lease, (2) the fifth year cumulative rent increase was neither modified nor eliminated by the amendment, and (3) the amount of base rent due is specified in the lease and the amendment, and the court should not have considered the language of the "whereas" clause in the preamble of the assignment. In opposition, the defendant argues that the court properly granted summary judgment in its favor because the assignment and the amendment resulted in a novation whereby the plaintiff released Southbury Food for all its responsibility under the lease, and modified the defendant's rental obligations under the lease in accordance with the assignment and the amendment.[8] We agree with the plaintiff and conclude that the fifth year cumulative rent increase was not eliminated indisputably by the language of the amendment or the assignment and that, as a result, a genuine issue of material fact exists as to whether the defendant is obligated to include in its base rental payments an additional sum representing the fifth year cumulative rent increase pursuant to the second paragraph of section 4 of the lease.

We begin our analysis by stating the appropriate standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the

light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . [T]he scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . [S]ummary judgment is to be denied where there exist genuine issues of fact and inferences of mixed law and fact to be drawn from the evidence before the [c]ourt." (Internal quotation marks omitted.) *Rickel* v. *Komaromi*, 144 Conn. App. 775, 791, 73 A.3d 851 (2013).

Because the motion for summary judgment at issue in the present appeal concerns a commercial lease, we also set forth relevant contract law principles. A lease is a contract and, therefore, "it is subject to the same rules of construction as other contracts. . . . The standard of review for the interpretation of a contract is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]. . . . If the language of [a] contract is susceptible to more than one reasonable interpretation, [however] the contract is ambiguous. . . .

"In construing a written lease . . . three elementary principles must be [considered]: (1) The intention of the parties is controlling and must be gathered from the language of the lease in light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . Furthermore, when the language of the [lease] is clear and unambiguous, [it] is to be given effect according to its terms. A court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [lease] must emanate from the language used in the [lease] rather than from one party's subjective perception of [its] terms."

(Citations omitted; footnote omitted; internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7–8, 931 A.2d 837 (2007).

"Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Citation omitted; internal quotation marks omitted.) *Nash* v. *Stevens*, 144 Conn. App. 1, 18, 71 A.3d 635, cert. denied, 310 Conn. 915, 76 A.3d 628 (2013).

As previously noted, in the second paragraph of section 4, titled "Base Rental," the lease provides the following: "For the fifth year of the [l]ease, [t]enant agrees to pay [l]andlord at [l]andlord's office, without any prior demand therefore, and without any deduction or setoff whatsoever, base rental at the annual rental amount of . . . ($216,000), plus the cumulative increase in the [CPI as issued by the United States Department of Labor over the previous four year period]. For example, if [the CPI] was . . . 3% for each of the [l]ease's first four years, then the base annual rent shall be . . . ($241,920) ((($216,000 x .03) x4) + 216,000). The rent shall be payable in twelve equal monthly installments on the first day of each month." Furthermore, in the third paragraph of section 4, the lease provides the following: "Thereafter, the base rental for each year shall increase by the [CPI] over the immediately preceding year's base rental and shall be payable in twelve equal monthly installments on the first day of each month without any prior demand, deduction or set-off whatsoever."

The amendment, which was executed between the plaintiff and the defendant on May 14, 2012, provides the following in relevant part: "[The plaintiff] and [the defendant] agree that the [l]ease is hereby amended and modified as follows . . . With respect to [section 4, titled "Base Rental"] of the [l]ease, the *third* paragraph therein shall be deleted and replaced with the following: 'Thereafter, the base rental for each year shall increase by 2.5% over the immediately preceding year's base rental and shall be payable in twelve equal monthly installments on the first day of each month without any prior demand, deduction or set-off whatsoever.' " (Emphasis added.) Section 6 of the amendment provides that "[e]xcept as expressly provided hereinabove, the remaining terms and conditions of the [l]ease shall remain unmodified and in full force and effect." The amendment was signed by the plaintiff and the defendant on May 14, 2012.

The assignment, which the plaintiff, defendant, and Southbury Food executed on May 14, 2012, provides

the following in relevant part: "WHEREAS; the [l]ease has an original term of [ten years, commencing on September 1, 2007, and ending on August 31, 2017]; and

"WHEREAS; the [current] annual base rent for the period [of September 1, 2011 to August 31, 2012, is $216,000 (e.g., $18,000 per month)]; and

"WHEREAS; [the plaintiff], [Southbury Food] and [the defendant] fully acknowledge the validity of the [l]ease . . . ."

Following these and other recital provisions, the assignment provides in relevant part: "[Southbury Food] hereby assigns to [the defendant] all of [Southbury Food's] right, claim, title and interest in and to the leased premises as set forth in the [l]ease . . .

"[The defendant] hereby accepts [Southbury Food's] assignment of all of [Southbury Food's] right, claim, title and interest in and to the leased premises as set forth in the [l]ease . . .

"[The plaintiff] hereby consents to the aforesaid assignment from [Southbury Food] to [the defendant], subject to all the terms, conditions and restrictions herein stated and subject to [the defendant's] delivery of the security deposit required under the [l]ease . . .

"[The plaintiff] is not in default pursuant to any [l]ease provision and [Southbury Food] is not in default of any [l]ease provision and remains current in the payment of all obligations thereunder . . .

"Effective upon [Southbury Food's] closing and sale to [the defendant], [the plaintiff] hereby releases [Southbury Food] of any and all liability and obligation under said [l]ease . . .

"[The defendant] acknowledges that [the plaintiff] has not made any representation to [the defendant] with respect to the leased premises . . .

"[The defendant] acknowledges that it is familiar with the leased premises and with the improvements situated thereon and it hereby accepts the same in its present condition 'as is' and that same is suitable and habitable for its purposes; and . . .

"In all other respects, the parties hereby ratify and confirm the [l]ease." The assignment was executed by the plaintiff, the defendant, and Southbury Food on May 14, 2012.

Although the operative provisions of the lease as amended do not eliminate the payment of the fifth year cumulative rent increase, one statement in the preamble of the assignment creates an inconsistency in this regard. This inconsistency stems from the third "whereas" clause in the assignment, which provides that "the [current] annual base rent for the period [of September 1, 2011, to August 31, 2012, is $216,000 (e.g., $18,000 per month)]." The second paragraph of section

4 of the lease, however, provides that in the fifth year, the one year period that commences on September 1, 2011, and that the aforementioned "whereas" clause references, the tenant is required to pay the fifth year cumulative rent increase in addition to the original base rent of $216,000. Additionally, pursuant to section 1 of the amendment, the third paragraph of section 4 of the lease required that commencing in the sixth year of the lease, which began on September 1, 2012, the base rent for each year would increase by 2.5 percent over the base rent of the immediately preceding fifth year. Pursuant to the lease, the base rent for the fifth year is increased by the fifth year cumulative rent increase. Thus, the "whereas" clause in the assignment is inconsistent with the fifth year cumulative rent increase set forth in the lease, which is not modified in section 1 of the amendment or in any of the operative provisions of the assignment. Pursuant to the second paragraph of section 4 of the lease, in addition to the base rent of $216,000, the defendant, as the tenant under the lease, would be responsible to pay the additional fifth year cumulative rent increase for that year of the lease, thereby elevating the amount of the base rent by that amount every year thereafter, in addition to the 2.5 percent increases contemplated to begin in the sixth year of the lease by virtue of the amendment.[9]

The court erred in granting the defendant's motion for summary judgment because it improperly determined that there was no genuine issue of material fact with respect to whether the parties to the assignment intended to eliminate, from the calculation of the base rent due for the sixth year of the lease and, thereafter, the fifth year cumulative rent increase. The court, referencing two parts of the assignment, the "whereas" clause, which indicated that the current base rent was $216,000, and the provision that stated that Southbury Food was current in its obligations under the lease, concluded that because the amount of the base rent payable at the time of the execution of the assignment and amendment was specified only in the "whereas" clause, the defendant was entitled to summary judgment. The court determined that the fifth year cumulative rent increase was not incorporated into either the assignment or the amendment. This determination, however, failed to consider that neither the amendment nor the assignment expressly deleted the lease provision modifying the fifth year cumulative rent increase, and the amendment states that "the remaining terms and conditions of the [l]ease shall remain unmodified and in full force and effect." A copy of the lease, which contained the fifth year cumulative rent increase in section 4, was attached to both the assignment and the amendment.

"[I]n construing contracts, [the court must] give effect to all the language included therein, as the law of contract interpretation . . . militates against inter-

preting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Stratford* v. *Winterbottom*, 151 Conn. App. 60, 72, 95 A.3d 538, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014). The court disregarded this principle by failing to give effect to operative provisions of the lease and the amendment.[10]

In reviewing the operative clauses of the lease, the amendment, and the assignment there remains a genuine issue as to whether the parties intended that, commencing September 1, 2012, the sixth year of the lease, the defendant, as the new tenant, was obligated to pay, in addition to the $216,000 original annual base rent, both the fifth year cumulative rent increase contained in the original lease as well as the 2.5 percent increase set forth in section 1 of the amendment.

The operative clauses of the assignment provide the following in relevant part: that, at the time of the assignment, the defendant, as an assignee and as a tenant under the lease, accepted all right, claim, title, and interest in the leased premises that Southbury Food originally held under the lease; that neither the plaintiff nor Southbury Food was in default pursuant to the lease; that Southbury Food, up until the assignment, had remained current in the payment of all obligations under the lease;[11] that, upon the complete execution of the assignment, Southbury Food was no longer subject to any liability or obligation under the lease; and that in all other respects, the parties to the assignment ratified and confirmed the lease, a copy of which was attached to the assignment. The plaintiff may have a valid claim that the third "whereas" clause in the preamble of the assignment, inasmuch as it suggests that the annual base rent for the fifth year of the lease was $216,000, cannot, in and of itself, negate the fifth year cumulative rent increase, an obligation set forth in the lease and not modified by the operative provisions of the amendment or the assignment. Where a recital provision and an operative provision are inconsistent with each other the operative provision must control. *Weiss* v. *Smulders*, 313 Conn. 227, 252, 96 A.3d 1175 (2014); 17A Am. Jur. 2d. 371, Contracts § 383 (2004).

In accordance with this contract principle and the principle that recitals in a contract are not binding obligations unless referred to in the operative provisions of the contract; *DeMorais* v. *Wisniowski*, supra, 81 Conn. App. 610; summary judgment was improperly granted in the defendant's favor. There remains a genuine issue of material fact as to whether the parties intended to modify the amount of base rent due in the fifth and subsequent years of the lease and the intent of the plaintiff and the defendant must be determined in light of the operative provisions of the three integrated documents that comprise their lease agreement.[12] Accordingly, we conclude that the court improperly

granted the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] The court's summary judgment disposed of all counts brought against the defendant by the plaintiff. After the court's decision in favor of the defendant on its motion for summary judgment, however, the defendant's counterclaim against the plaintiff remained pending.

[2] The lease provided the following example to illustrate how the fifth year cumulative rent increase would be calculated: "For example, if [the cumulative rent increase in the [CPI] was three percent (3%) for each of the [l]ease's first four years, then the base annual rent shall be . . . ($241,920) (((\$216,000 x .03) x 4) + 216,000)."

[3] Southbury Food assigned all of its right, claim, title, and interest in and to the demised premises as set forth in its lease with the plaintiff.

[4] The plaintiff alleged in its complaint that "[o]n or about October 12, 2011, Tomey Realty agreed to a temporary rent concession for one year retroactive to August 1, 2011. Pursuant to the temporary concession, the base rental remained \$216,000 . . . for the fifth year of the lease, and the [fifth year cumulative rent increase] was delayed until September 1, 2012. All other aspects of the lease remained in effect pursuant to the temporary concession." A copy of the alleged temporary concession letter was attached to the plaintiff's complaint as an exhibit.

[5] The plaintiff attached copies of the following documents to its motion: an affidavit of Edward Tomey, the plaintiff's director; the lease; the assignment; the amendment; the affidavit of Keith Sullivan, the plaintiff's accountant; a table providing CPI data from 1913 to 2014; and a table documenting the defendant's rental payments made to the plaintiff from September, 2012 to November, 2014.

[6] The plaintiff did not appeal from the court's denial of that motion.

[7] "While the plaintiff alleges and [the defendant] references the existence of a verbal understanding between [the plaintiff] and Southbury [Food] pursuant to which payment of the [fifth year cumulative rent increase] would be deferred for a year, the parol evidence rule forbids the use of extrinsic evidence outside the four corners of the contract to vary or contradict its terms. *Alstom Power, Inc.* v. *Blacke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004)."

[8] Furthermore, the defendant argues that if this court affirms the judgment of the trial court, the case should be remanded to that court solely for adjudication of its counterclaim, which seeks attorney's fees pursuant to the lease. Because we are reversing the judgment, we need not consider this claim.

[9] There is also a genuine issue of material fact as to the meaning and import of paragraph 5 of the assignment, an operative provision, which states that Southbury Food "is not in default of any [l]ease provision and remains current in the payment of all obligations thereunder . . . ." Because the lease was not assigned or amended until May 14, 2012, nine months into the fifth year, the plain language of the lease would dictate that Southbury Food had begun to pay a base rent that included the fifth year cumulative rent increase effective September 1, 2011. Both parties, however, allege the existence of a temporary rent concession. See footnotes 4 and 7 of this opinion. Attached to the plaintiff's complaint is a letter, addressed to Barry Tarnowicz, the president and chief executive officer of Southbury Food, dated October 12, 2011, wherein Keith Sullivan, a certified public accountant who provided services for the plaintiff, indicated that the plaintiff was willing to permit Southbury Food to pay \$216,000 in base rent for an additional year, retroactive to August 1, 2011. The letter further provided that "[a]ll aspects of the current lease remain in effect." The defendant also attached this letter to its motion for summary judgment, along with a financial statement of Southbury Food that indicated the following in relevant part: "[Southbury Food] leases its premises from [the plaintiff] . . . . Rent expense was \$216,000 for each of the years ended December 31, 2011 and 2010. Effective September 1, 2011, in addition to the base rent, [Southbury Food] was to also pay the cumulative increase in the [CPI] over the previous four year period. The rent would then increase annually by the increase in the CPI each year through August 31, 2017. This increase was delayed until September 1, 2012." The parties disagree as to the effect, if any, of the temporary rent concession on the terms of the lease prior to the execution

of the assignment. The court disregarded the temporary rent concession, referring to it as a "verbal understanding," and concluded that it was inadmissible, under the parol evidence rule, to explain the intent of the parties. We are not convinced that evidence of the temporary rent concession should have been precluded, as it is a generally recognized principle that "[t]he parol evidence rule does not forbid the contradiction of any instrument *or portion of an instrument which purports merely to recite facts*." (Emphasis added.) 11 S. Williston, Contracts (4th Ed. 2012) § 33.46, pp. 1222–23; see also *Hartford-Connecticut Trust Co.* v. *Devine*, 97 Conn. 193, 116 A. 239 (1922). If the factual recitations in the assignment, stating that the current annual base rent for the fifth year of the lease was $216,000 and that Southbury was not in default of any lease provision and remained current in the payment of all obligations thereunder, are merely factual, they may possibly be contradicted by evidence of the temporary rent concession.

[10] "As a general rule, [r]ecitals in a contract, such as 'whereas' clauses, are merely explanations of the circumstances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract." (Internal quotation marks omitted.) *DeMorais* v. *Wisniowski*, 81 Conn. App. 595, 610, 841 A.2d 226, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004). "[I]f the recitals in a contract are clear and the operative part is ambiguous, the recitals govern the construction; however, if the recitals are ambiguous and the operative part is clear, the operative part must prevail. *If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part must control.*" (Emphasis added.) 17A Am. Jur. 2d 371, Contracts § 383 (2004). The United States Court of Appeals for the Second Circuit also has "held that [a]lthough a statement in a whereas clause may be useful in interpreting an ambiguous operative clause in a contract, it cannot create any right beyond those arising from the operative terms of the document." (Internal quotation marks omitted.) *Aramony* v. *United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001); accord *Abraham Zion Corp.* v. *Lebow*, 761 F.2d 93, 103 (2d Cir. 1985); *Genovese Drug Stores* v. *Connecticut Packing Co.*, 732 F.2d 286, 291 (2d Cir. 1984). Additionally, in *Weiss* v. *Smulders*, 313 Conn. 227, 251–52, 96 A.3d 1175 (2014), an appeal involving an alleged violation of the parol evidence rule, our Supreme Court also noted that the substantive provisions of a written agreement control over recital provisions, particularly where the recital provisions pertain to a collateral matter that falls outside the scope of the subject matter of the written agreement. See also id., 252 n.13.

[11] As previously noted in footnote 9 of this opinion, the statement that Southbury Food was current in the payment of all its obligations under the lease may be contradicted, at trial, by the temporary rent concession allegedly negotiated between the plaintiff and Southbury Food in October, 2011.

[12] We note that the defendant, in its counterclaim, alleges that the assignment and the amendment resulted in a novation whereby a new lease was formed, under which the defendant's rental obligation was modified such that the fifth year cumulative rent increase in the lease was substituted with a "fixed rental formula." "[A]n essential element of any novation is the extinguishing of the original contract by substitution of a new one." *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 145, 709 A.2d 1075 (1998), overruled on other grounds by *Ulbrich* v. *Groth*, 310 Conn. 375, 78 A.3d 76 (2013). "A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract. If it contains terms inconsistent with the former contract, so that the two cannot stand together it exhibits characteristics . . . indicating a substitute contract." (Internal quotation marks omitted.) *Alarmax Distributors, Inc.* v. *New Canaan Alarm Co.*, 141 Conn. App. 319, 331–32, 61 A.3d 1142 (2013). At this point, we decline to comment on the merits of the defendant's novation claim.